## ANDREW HARRIS v. THE STATE.

### No. 1682. Decided April 17, 1912.

#### Rehearing denied June 26, 1912.

**1.—Murder—Change of Venue—Discretion of Court.**

A motion for change of venue is addressed to the sound discretion of the trial judge, and unless on appeal it is clear that the court has abused his judicial discretion, his ruling will be sustained. Following Tubb v. State, 55 Texas Crim. Rep., 617.

**2.—Same—Challenge for Cause—Jury and Jury Law.**

The fact that one of the brothers of the juror had been on the jury that had formerly tried defendant, and told said juror that in his opinion defendant was guilty would not be ground of challenge for cause under article 675, Code Criminal Procedure, when the juror answered that he had no bias or prejudice in favor of or against defendant, and had formed no conclusion as to the guilt or innocence of defendant, and would not be influenced by what he was told; besides the record did not show that an objectionable juror was forced on defendant.

**3.—Same—Expert Opinion—Evidence.**

Upon trial of murder there was no error in permitting a practicing physician to testify that the skull of deceased was crushed, and that it took a tremendous blow to do this.

**4.—Same—Evidence—Clothes of Deceased.**

Where, upon trial of murder, the State's witnesses had testified that they were present when the trunk of defendant was searched in the house where he resided and that a certain vest was found which was identified as that of the deceased, there was no error in the examination of said witnesses to hand said vest to the witnesses and ask them if they had ever seen the vest, to which they answered that it was that of deceased.

**5.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions failed to set out the proceedings and attendant

circumstances with reference to certain testimony as to the size of the deceased and how it compared with one who tried on his vest, the same could not be considered on appeal.

#### 6.—Same—Evidence—Bill of Exceptions.

Where, upon trial of murder,· the State objected to the cross-examination of one of its witnesses who· was asked if he had not made a complaint against a third party charging him with this offense, and the bill of exceptions failed to show what the answer of the witness would have been, the same could not be reviewed on appeal.

#### 7.—Same—Evidence—Bill of Exceptions.

Where appellant complained that the State's witness was asked if a certain undershirt and jumper found in defendant's trunk had been washed to which witness answered, yes, and the bill of exceptions did not show the connection with other evidence in the case, the same could not be reviewed on appeal, and can not be aided by the statement of facts.

#### 8.—Same—Evidence—Bill of Exceptions.

Where the appellant complained to the question what witness found in the trunk, and his answer thereto that it was a truss lying right on top, and the bill of exceptions did not show whether any other question was asked the witness, and its connection with the case, there was no error.

#### 9.—Same—Evidence—Leading Questions.

Where, upon trial of murder, the State's witness was asked whether or not she recognized a certain vest found in defendant's trunk and she answered that it was the property. of deceased, the question was not leading and the answer admissible.

#### 10.—Same—Evidence—Stained Clothes.

Where, upon trial of murder, the State's witness testified that the stain from her husband's shirt was the same as the stain on the truss which was found in defendant's trunk, and that deceased wore the same kind of clothes that her husband wore, the same was admissible; besides the bill of exceptions was defective.

#### 11.—Same—Evidence—Subsequent Searches—Bill of Exceptions.

Where, upon trial of murder, the defendant moved to strike out the testimony of the State's witness with reference to finding a certain vest in the trunk of the defendant, the morning after he was arrested, and also with reference to finding a certain undershirt and jumper· at a second search of said trunk, after the first search had already been made and said articles were not there, and also with reference to a third search when a truss found in said trunk after the second search, for the reason that defendant was in jail in a different· county during the time each and every one of these searches were being made and that said testimony could have been manufactured, but the bill of exceptions did not show whether these articles would tend to connect the defendant with the commission of any offense and did not exclude every theory upon which said testimony would be admissible, there was no error; besides there was the same kind of testimony in the record which was not objected to. Following Ferguson v. State, 61 Texas Crim. Rep., 152 and other cases. Davidson, Presiding Judge, dissenting.

#### 12.—Same—Rule Stated—Practice on Appeal.

. A bill of exceptions should be full and explicit so that the matters presented for revision may be comprehensible without recourse to inference, and must set out the proceedings in the court below sufficiently to enable the Appellate Court to pass thereon. Following Chapman v. State, 37· Texas Crim. Rep., 167, and other cases.

#### 13.—Same—Rule Stated—Bill of Exceptions.

The signature of the judge to a bill of exceptions only proves that defendant made the motion on these grounds, but verifies nothing else, and under the

decisions the Appellate Court is not permitted to aid the bill by reference to the statement of facts. Following James v. State, 63 Texas Crim. Rep., 75, and other cases.

**14.—Same—Service—Copy of Indictment.**

In the absence of a bill of exceptions, the question in regard to service on defendant of a copy of the indictment can not be considered on appeal.

**15.—Same—Charge of Court—Alibi.**

Where, upon trial of murder, the defendant requested no charge on the question of an alibi, and made no exception to the charge of the court which submitted the issue of defendant's guilt and the reasonable doubt, there was no error.

**16.—Same—Charge of Court—Corpus Delicti.**

Where, upon trial of murder, the court instructed the jury that if they did not find from the evidence beyond a reasonable doubt that the person alleged as deceased is dead, and that defendant unlawfully killed her, to acquit the defendant, the issue as to whether or not the remains of deceased were found was correctly submitted.

**17.—Same—Charge of Court—Circumstantial Evidence.**

Where, upon trial of murder, the evidence was circumstantial, and the court in his charge on circumstantial evidence followed approved precedent, there was no error. Following Reeseman v. State, 59 Texas Crim. Rep., 430, and other cases.

**18.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the defendant was convicted of murder in the first degree upon circumstantial evidence, but the same was sufficient to authorize the conviction, there was no error. Davidson, Presiding Judge, dissenting.

**19.—Same—Statement of Facts—Rehearing.**

Where, upon motion for rehearing on the ground that the Appellate Court had incorrectly stated the facts upon which it based the affirmance of the judgment below, the record bore out the court's statement of facts on the various discrepancies assigned, there was no error.

**20.—Same—Evidence—Erroneous Admission of Testimony.**

It is well settled in this State that the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony. Following Wagner v. State, 53 Texas Crim. Rep., 307, and other cases.

**21.—Same—Case Stated—Harmless Error.**

Where, upon appeal from a conviction of murder, appellant objected to the introduction in evidence of a certain truss found in defendant's trunk because it appeared that the same was placed therein after the first or second search of said trunk in defendant's absence, but it appeared that certain other clothes of the deceased had been found in said trunk and testimony as to them had been admitted without objection, there was no reversible error; besides the bill of exceptions was defective. Davidson, Presiding Judge, dissenting.

**22.—Same—Counsel for Appellant.**

See opinion showing that counsel for appellant, on account of sickness, etc., were prevented from preparing the bills of exception and were compelled to depend upon one not an attorney to prepare them.

Appeal from the District Court of Washington. Tried below before the Hon. Ed R. Sinks.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*R. Lyles, Mathis & Teague,* for appellant.—Upon question of the insufficiency of the evidence: Saens v. State, 20 S. W. Rep., 737; Woodwarth v. State, 20 Texas Crim. App., 375; Walker v. State, 14 id., 609; Merritt v. State, 2 id., 177; Griffith v. State, 9 id., 372; Hodde v. State, 8 id., 382; Satillo v. State, 16 Texas Crim. App., 249; Harris v. State, 28 id., 308.

Upon question of admitting testimony as to articles found in defendant's trunk during subsequent searches, and the admission in evidence of such articles: Morris v. State, 30 Texas Crim. App., 117; Morton v. State, 67 S. W. Rep., 115; Draper v. State, 22 Texas, 401; Russell v. State, 11 Texas Crim. App., 288; Somerville v. State, 6 id., 433; Post v. State, 10 id., 579; Preston v. State, 4 id., 186; Shamburger v. State, 24 id., 433; Hester v. State, 15 id., 567.

On question of challenge for cause: Ward v. State, 19 Texas Crim. App., 687; Rothschild v. State, 7 id., 540; Post v. State, 10 id., 579.

On question of court's charge on alibi: Wilson v. State, 51 S. W. Rep., 916; Joy v. State, 51 S. W. Rep., 933.

On question of court's failure to charge as to remains of deceased: Self v. State, 28 Texas Crim. App., 398.

On question of admission of illegal testimony: Capps v. State, 40 Texas Crim. App., 103; Stone v. State, 45 id., 93; Hearne v. State, 50 id., 431; Morton v. State, 43 id., 536.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—The appellant was indicted, tried and convicted of murder in the first degree and his punishment assessed at imprisonment in the penitentiary for life. This is the second appeal in this case, the opinion of the court on the former appeal being reported in 62 Texas Crim. Rep., 235, 137 S. W. Rep., 373.

On this trial appellant filed an application for a change of venue. Evidence was heard, and from a careful review of same we can not say the court erred in overruling the plea. This is a matter addressed to the sound discretion of the trial judge, and unless on appeal it is clear that the court has abused his judicial discretion, his ruling will be sustained. (Tubb v. The State, 55 Texas Crim. Rep., 617; Bohannon v. The State, 14 Texas Crim. App., 302; Martin v. The State, 21 Texas Crim. App., 10; Dupree v. The State, 2 Texas Crim. App., 613.)

In examination of the juror Loesch, he answered all the statutory questions in a way that would show he was a qualified juror. On cross-examination it developed that his brother had been a juryman when appellant was tried before, and that this brother had told him that appellant was guilty. However, he stated this would have no

influence with him and he had no opinion in the case. Appellant challenged the juror for cause, which challenge was by the court over-ruled, when appellant peremptorily challenged him. There is no evidence that any objectionable juror was forced on appellant by this action of the court; in fact, in the order of the court approving the bill he says that only one juror was chosen after appellant exhausted his challenge, and if this juror was objectionable to appellant it was not made known to him. The fact that one of his brothers had been on the jury that had formerly tried appellant, and had told Mr. Loesch that in his opinion appellant was guilty would not be a ground of challenge for cause under article 675 of the Code of Criminal Procedure, when the juror answers that he has no bias or prejudice in favor of or against the appellant; that from hearsay or otherwise he has formed no conclusion as to the guilt or innocence of the appellant, and that what his brother had told him would have no influence with him in deciding the case. Had the juror been really disqualified, under the decisions of this court, this matter would present no error, as it is not made manifest by the record that an objectionable juror was forced on appellant. Hudson v. State, 28 Texas Crim. App., 323; Rippey v. State, 29 Texas Crim. App., 37; Sutton v. State, 31 Texas Crim. Rep., 297; Kramer v. State, 34 Texas Crim. Rep., 84; Jordan v. State, 37 Texas Crim. Rep., 224.

While the witness Dr. P. D. Barnhill was testifying the State was permitted to prove by him that deceased's skull was crushed, and in answer to the question, "What sort of blow would it be necessary to produce that?" was permitted to state, "Take a tremendous blow." The objection was that it was a matter of opinion. The witness was a practicing physician, and had been so for a number of years, and as such he would be permitted to give his opinion as an expert.

It appears from the record that the evening of the arrest, or the morning thereafter, a trunk was searched in the house where appellant resided, and in which clothes were found with his name thereon, and in the trunk a certain vest was found that Mr. Koch and others testified was the vest of one of the deceased persons—Mr. Rudolph's vest. In examination of the witnesses, the prosecution would hand the vest to a certain witness and ask them if they had even seen the vest, and the witnesses were permitted to answer that it was Mr. Rudolph's vest. The objection urged was, instead of handing the vest to the witness, the witness should have been required to describe the vest owned by Mr. Rudolph before handing it to the witness. The witness had testified they were present when the vest was taken out of the trunk, and identified as the vest belonging to one of the deceased parties, and the bills present no error. Kidwell v. State, 35 Texas Crim. Rep., 264.

While the witness John Koch was testifying he was asked: "Did you up there in Mr. Searcy's office state that Mr. Rudolph was about the size of Mr. Searcy?" and he answered, "Yes, sir." This was

objected to on the ground that it was hearsay, as appellant was not present in Mr. Searcy's office when the remark was made. The bill is incomplete in that it does not show in what connection the testimony was offered. In Thompson v. State, 29 Texas Crim. App., 208, it was held that a bill of exceptions to be considered must sufficiently set out the proceedings and attendant circumstances to enable the court to know certainly that error has been committed. So far as this bill discloses that may or may not have been material testimony; certainly under the qualification of the court the bill presents no error, as the testimony would be admissible, as it was shown that Mr. Searcy tried on the vest, and this was intended to show that the witness had thus described deceased prior to the time he tried on the vest.

In another bill it is complained that Sam Craig, a witness for the State, on cross-examination was asked if he, Craig, had not made a complaint against a negro named Richard Stilwell, charging him with the same offense, which question was objected to by the State. The bill does not disclose what the answer of the witness would have been and is, therefore, insufficient to present any question for review. (Love v. State, 35 Texas Crim. Rep., 27; White v. State, 32 Texas Crim. Rep., 625; Childers v. State, 37 Texas Crim. Rep., 392; Adams v. State, 37 Texas Crim. Rep., 285; Cooksie v. State, 26 Texas Crim. App., 72.) This court can not surmise what the answer of the witness would have been, nor its materiality if the witness had answered that he did make such a complaint. In another bill it is complained that this witness was asked, "if that undershirt and this jumper had been washed?" to which he answered, "Yes, sir," which was objected to on the ground that he was not an expert. These questions and answers are all that is in the bills. The connection is not shown. It does not appear by them what shirt and jumper the evidence had reference to; who owned them; where they came from, or any other fact that would enable us to pass on the matter intelligently. In McGlasson v. State, 38 Texas Crim. Rep., 351, it was held that a bill of exceptions can not be aided by the statement of facts filed. They should be so explicit as to enable the court on appeal to fully understand all the facts upon which the correctness or error of the rulings depend, otherwise they will not be considered on appeal. (Livar v. State, 26 Texas Crim. App., 115, and cases cited in section 857, White's Annotated Code of Criminal Procedure.) As to whether an article has been washed or not is not one of expert testimony. It is a matter within the knowledge of all mankind, and any witness would be permitted to state whether or not a given article had the appearance of being washed. Sections 511, 512, Wharton's Law of Evidence.

Bill No. 10 complains: "That while the State's witness, Adolph Krueger, was upon the stand, upon direct examination, the following questions were asked said witness: "Q. What did you find in

the trunk that time, Mr. Krueger? A. I opened the trunk; as I opened the trunk there was a little box in there—on top; I set the little box out—raised it out, and there was a truss laying right on top. (Here counsel handed witness truss.) Counsel for defendant objected to State's counsel handing the witness the truss for the reason that defendant is entitled to have him describe the truss that he found—but to give him the truss and ask him to examine it is putting the answer right in the witness' mouth. The witness ought to be first made to describe the truss, and then let counsel hand him the truss." This is all the bill. It does not show whether any other question was asked the witness. The witness would certainly be permitted to state what he found, if the evidence was admissible for any purpose. As presented in this bill, there is no error in the bill, even if counsel handed the witness a truss and he testified that it was the truss he found in the trunk, which fact the bill does not make manifest, and we can not aid it by reference to the statement of facts or by indulging in inference. Attaway v. The State, 31 Texas Crim. Rep., 475; Gonzales v. The State, 32 Texas Crim. Rep., 611; Hooper v. The State, 29 Texas Crim. App., 614; Eldridge v. State, 12 Texas Crim. App., 208; Walker v. State, 9 Texas Crim. App., 200; McGlasson v. State, 38 Texas Crim. Rep., 351.

Bill No. 13, as qualified by the court, would complain of the following questions to the witness Mrs. Annie Weyand and her answers: "State whether or not you recognized this vest as belonging to anybody? A. Yes, sir. Q. Whom did you recognize it as being the property of? A. To my father." These questions were not subject to the objection that they were leading.

While the witness Mrs. John Koch was testifying she was permitted to state she had made her husband some shirts out of cloth, and he wore them and they stained his underclothing blue. In the bill it is not shown in what connection this testimony was offered, and the bill is incomplete in a number of respects, but if we turn to the testimony of the witness it appears she testified: "I was present when my mother bought some cloth out of which shirts were to be made. I bought some from the same piece—made my husband some shirts out of it. My husband wore them and they stained his underclothing blue. My mother made her cloth into shirts for my father; he wore the shirts, and worked in those shirts. They were made out of the same cloth as my husband's shirts. There is a blue stain on the truss (referring to the truss introduced in evidence); the stain on the truss is the same as the stain on my husband's underwear." The evidence is thus shown to be admissible and very material, for the State had shown that Mr. Rudolph (deceased) wore a truss; that this truss was found at the house where defendant resided, and was stained blue. The State was seeking to connect defendant by circumstances with the death of Mr. and Mrs. Rudolph, and this

would be a cogent circumstance to be considered by the jury, if the truss was admitted in evidence.

These are all the bills, except Nos. 8 and 11, and in their brief counsel for defendant seem to rely mainly on them, and we will copy them in full. No. 8 reads:

"Be it remembered, that upon the trial of the above styled and numbered cause, in this court, on this the 25th day of September, A. D. 1911, the following proceedings were had, to wit:

"After the witness Sam Craig had testified as to the different searches made, defendant, by counsel, moved the court to strike out the testimony of Mr. Craig in reference to finding the vest in a trunk the morning after the defendant was arrested; also in reference to finding an undershirt and jumper at a second search of that trunk —after a first search had already been made and the articles were not there; and also in reference to a third search when they found a truss after a first and second search had already been made, for the reason that the defendant was in jail in a different county during the time each and every one of these searches were being made, and the defendant could not be responsible for the action of anybody else in going and putting articles in the trunk in his absence, and if it was done it would lay a predicate for the purpose of manufacturing testimony against any man charged with a crime, and especially when this defendant was in jail, which objection the court overruled, and the defendant then and there excepted to the action of the court in not withdrawing said testimony from the jury, and here now tenders this bill of exception, and prays that the same may be examined, signed and, by the court, approved and ordered filed as a part of the record in this cause."

Bill No. 11 reads: "Be it remembered, that upon the trial of the above styled and numbered cause, in this court, on this the 25th day of September, A. D. 1911, the following proceedings were had, to wit:

"After the witness Adolph Krueger had testified as to the different searches made, the defendant, by counsel, moved the court to strike out the testimony of Mr. Koch with reference to finding the vest at the first search the morning after the defendant was arrested and in jail in a different county; and further, to strike out the testimony in reference to finding a truss in the same trunk in which he found the vest some two weeks or ten days after the defendant was arrested and was in jail in a different county, for the reason that the defendant could not be responsible for the action of anybody else in going and putting articles in his trunk in his absence, and if it was done it would lay a predicate for the purpose of manufacturing testimony against any man charged with crime, and especially when this defendant was in jail at the time the searches were made.

"Which objection was, by the court, overruled, and to which action of the court, in not withdrawing said testimony from the jury, defendant, by counsel, excepted, and here now tenders his bill of excep-

ceptions, and prays that the same may be examined, signed and, by the court, approved and ordered filed as a part of the record in this cause."

Under the decisions of this court these bills are insufficient to present any question for review. Without reference to the statement of facts and without indulging in inference we could not and would not know in what these articles would and could tend to connect defendant with the commission of any offense, and if so, what offense. The bills do not show whether the State was endeavoring to prove that the vest belonged to defendant or deceased, or in what way the State would seek to make use of this vest in anyway detrimental to the defendant. The bills do not by their allegations exclude every theory upon which the testimony would and could be held to be admissible. Had the testimony of these two witnesses been stricken from the record, there was testimony of other witnesses in the record to the same facts in the record to which no bills of exception were reserved—Mr. Koch, Sheriff Scarborough and others. It has been held by this court that the approval by the judge of a bill of exceptions, which merely recites the objections as they were urged by defendant, and does not purport to set out the evidence itself, only certifies the grounds of the objections, and not that the grounds were true, or that the facts stated were proven. Mootry v. State, 35 Texas Crim. Rep., 450; Hennessy v. The State, 23 Texas Crim. App., 340; Bigham v. State, 36 Texas Crim. Rep., 453; Ezzell v. State, 29 Texas Crim. App., 521; Huffman v. State, 28 Texas Crim. App., 174. The rule governing bills of exception as held by this court was announced in Ferguson v. State, 61 Texas Crim. Rep., 152, 136 S. W. Rep., 465, and also in the following decisions where it was held:

"The allegations of a bill of exceptions should be full and explicit so that the matters presented to the court on appeal for revision may be comprehensible without recourse to inference. Eldridge v. State, 12 Texas Crim. App., 208; McGlasson v. State, 38 Texas Crim. Rep., 351. They should be so explicit as to enable the court on appeal to fully understand all the facts upon which the correctness or error of the rulings depends; otherwise they will not be considered. Livar v. State, 26 Texas Crim. App., 115; Walker v. State, 19 Texas Crim. App., 176; Hennessy v. State, 23 Texas Crim. App., 341. A bill of exceptions must set out the proceedings in the court below sufficiently to enable the court, on appeal, to know that an error has been committed. Thompson v. State, 29 Texas Crim. App., 208. It must be so full in its statements that in and of itself it will disclose all that is necessary to manifest the supposed error. Tweedle v. State, 29 Texas Crim. App., 586; Quintana v. State, 29 Texas Crim. App., 401; Hooper v. State, 29 Texas Crim. App., 614; Wilkerson v. State, 31 Texas Crim. Rep., 86. Bills of exception must state enough of the evidence or facts proved to render intelligible the ruling excepted to. Ballinger v. State, 11 Texas Crim. App., 323; Ferguson

v. State, 61 Texas Crim. Rep., 152, 136 S. W. Rep., 465. See the following cases where the bills of exception were held insufficient and defective: Chapman v. State, 37 Texas Crim. Rep., 167; Jordan v. State, 37 Texas Crim. Rep., 224; Kalsky v. State, 37 Texas Crim. Rep., 247; Howerton v. State, 43 S. W. Rep., 1018; Miller v. State, 36 Texas Crim. Rep., 47; Yungman v. State, 35 Texas Crim. Rep., 80; Bryant v. State, 35 Texas Crim. Rep., 394; Rodgers v. State, 34 Texas Crim. Rep., 612; Thompson v. State, 33 Texas Crim. Rep., 217; Walker v. State, 33 Texas Crim. Rep., 359; Wilson v. State, 32 Texas Crim. Rep., 22; Mealer v. State, 32 Texas Crim. Rep., 102; Simms v. State, 32 Texas Crim. Rep., 277; Burge v. State, 32 Texas Crim. Rep., 359; Martin v. State, 32 Texas Crim. Rep., 441; Loakman v. State, 32 Texas Crim. Rep., 561; White v. State, 32 Texas Crim. Rep., 625; Coyle v. State, 31 Texas Crim. Rep., 604; Browder v. State, 30 Texas Crim. App., 614; Schoenfeldt v. State, 30 Texas Crim. App., 695; Jacobs v. State, 28 Texas Crim. App., 79; Jackson v. State, 28 Texas Crim. App., 143; Huffman v. State, 28 Texas Crim. App., 174; Walker v. State, 28 Texas Crim. App., 503; Graham v. State, 28 Texas Crim. App., 582; Hughes v. State, 27 Texas Crim. App., 127; Cooksie v. State, 26 Texas Crim. App., 72; May v. State, 25 Texas Crim. App., 114; Woodson v. State, 24 Texas Crim. App., 153; Buchanan v. State, 24 Texas Crim. App., 195; Gilleland v. State, 24 Texas Crim. App., 524; Cooper v. State, 22 Texas Crim. App., 419; House v. State, 19 Texas Crim. App., 227; Counts v. State, 19 Texas Crim. App., 450; Bryant v. State, 18 Texas Crim. App., 107; Pierson v. State, 18 Texas Crim. App., 524; Yanez v. State, 6 Texas Crim. App., 429. Inferences will not be indulged to supply omissions in bills of exceptions. Davis v. State, 14 Texas Crim. App., 645. On appeal, the court will not supply omissions in bills of exceptions, nor aid such bills by inference or presumption. McGlasson v. State, 38 Texas Crim. Rep., 351; Attaway v. State, 31 Texas Crim. Rep., 475; Gonzales v. State, 32 Texas Crim. Rep., 611; Hooper v. State, 29 Texas Crim. App., 614; Eldridge v. State, 12 Texas Crim. App., 208; Walker v. State, 9 Texas Crim. App., 200. A bill of exceptions can not be aided by statements in reply to a motion for new trial, nor by the statement of facts. McGlasson v. State, 38 Texas Crim. Rep., 351; Howerton v. State, 43 S. W. Rep., 1018." Other cases might be cited, and under the rules there announced the two bills above do not present the matters in a way we can pass on whether or not the testimony should have been admitted without reference to the statement of facts, and then to pass on the question we would have to read all the evidence. These bills only show that defendant moved to strike out certain testimony for reasons named: That defendant was in jail in a different county at the time each of the searches was made, and defendant could not be responsible for someone else placing articles in his trunk during his absence. These were the grounds of objection, and the signature of

the judge only proves that the defendant made this motion on these grounds, but verifies nothing else, and does not verify that the articles were found at different searches, where the property was found, nor when found. However, we have read this entire record, as we do in every case that comes to us, and if, under our decisions, we were permitted to aid the bills of exceptions by reference to the statement of facts, we would find that Mr. and Mrs. Rudolph were found one morning in the smoking ruins of their home; that their bodies were burned below the waist; that their heads were crushed; that some time thereafter suspicion rested on defendant and he was arrested. He was arrested at night and the next morning a trunk in the house where he resided was searched, and in that trunk a vest was found that Mr. and Mrs. John Koch and Mrs. Weyand identify as the vest worn by the deceased. They were present when the vest was found, and it being found in a trunk in the house where defendant resided at the time of his arrest, and in which trunk clothing with defendant's name thereon was found, the vest and the fact of where it was found would be admissible in testimony. These witnesses say that at this time they were looking for articles belonging to the deceased, and, at the time, they found undershirts and other men's clothing in the trunk, which were placed back therein. Sheriff Scarborough says he returned the next day and again searched the trunk; other witnesses would place it some days later. The sheriff says he found an undershirt in the trunk with blood on it. The witnesses who first searched the trunk say there were undershirts in the trunk, but they did not notice that one had blood on it. Sheriff Scarborough found one with blood on it. This would be admissible in evidence. The witnesses who first searched the trunk do not exclude the idea that the undershirt with blood on it was in the trunk at the time they looked, for they say there were undershirts in the trunk, and they were looking at that time for articles belonging to the decedents. The fact that those who first searched the trunk did not notice blood on any of the undershirts would go to the weight of the testimony and not its admissibility. The truss, however, stands in a different relation, and if the bill of exceptions presented the matter properly we would hold that it should not have been admitted, for it must have been placed in the trunk after the arrest of defendant. The testimony would exclude the idea that the truss was in the trunk when it was searched the morning after defendant's arrest. However, under the decisions of this court the bill as drawn does not present this in a way that we would be authorized to reverse the case on account of admitting it in evidence, as it is not properly before the court under the bill, and the facts we find in the statement of facts are not in the bills of exception. See also James v. State, 63 Texas Crim. Rep., '75, 138 S. W. Rep., 612.

Neither can we review the question in regard to service on defend-

ant of a copy of the indictment, as no bill of exceptions was reserved in regard to the matter.

The complaint of the omission in the charge of the court can not be sustained. While it is true, as stated by defendant, in the motion, that Bill Isaacs testified he saw the fire when the house was burned, and it was about nine o'clock at night, and Link Black testified that defendant came to his house after dark and remained there about two hours, yet this would not exclude the idea that defendant could have committed the crime, but if this testimony would present the issue of an alibi, defendant requested no such charge and this court in a well considered opinion in the case of Jones v. State, 53 Texas Crim. Rep., 131, has held that when no exception was reserved at the time the charge was given, and no special charge requested, where' the court submits the issue of defendant's guilt and charges the doctrine of reasonable doubt, this would of necessity include a finding by the jury as to whether the defendant was present and committed the crime, and a failure to charge on alibi would not be error.

The complaint that the court failed to submit the issue of whether or not the remains found were those of Mrs. Rudolph is not well founded. The court instructed the jury: "If you do not find from the evidence, beyond a reasonable doubt, that the said Mary Rudolph is dead, and that defendant unlawfully killed her, you will return a verdict of not guilty."

The only other complaint as to the charge is to the paragraph on circumstantial evidence. The court charged the jury: "In this case the State relies for a conviction of the defendant upon circumstantial evidence, alone. The court, therefore, instructs you that to warrant a conviction of the defendant on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt; all the facts' (that is, necessary facts to the conclusion), must be consistent with each other, and with the main fact sought to be proved, and the circumstances taken together must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused, and no other person, committed the offense charged against him." This charge has frequently been approved by this court. Barr v. State, 10 Texas Crim. App., 510; Reeseman v. State, 59 Texas Crim. Rep., 430, 128 S. W. Rep., 1129; Jones v. State, 34 Texas Crim. Rep., 491; Smith v. State, 35 Texas Crim. Rep., 621; Rye v. State, 8 Texas Crim. App., 160; Ramirez v. State, 43 Texas Crim. Rep., 455; Bell v. State, 71 S. W., 24.

The only remaining assignment relates to the insufficiency of the evidence. The evidence would convince one that Mrs. Mary Rudolph and her husband were foully murdered by someone while quietly resting at their home near the little town of Carmine. That whoever committed the crime burned the house in the hope of hiding his

crime in the ashes of the house, and, it was hoped, the ashes of their bodies. Enough of the bodies escaped the flames for the children to positively identify one of the corpses as that of their mother. The testimony of the guilt of defendant is dependent entirely on circumstances, but juries of that county have twice sat in judgment on this case, and each time have returned verdicts finding defendant guilty of murder in the first degree, and in passing on the record we are not to decide what would be our finding were we in the jury box, but only to decide, would the evidence authorize the deductions drawn by the jury, and if the facts proven by the State are true, do they sustain the verdict? Taking the fact that when defendant was arrested, the pants he had on at that time had on them splotches of blood, that physicians say was human blood, and in the record there is no explanation of how it came there, unless, when with some heavy instrument, the heads of the victims were crushed, splotches of blood scattered on this clothing; that the vest found in the trunk wherein defendant's clothing was found, three of deceased's children say was the property of deceased, and the other facts and circumstances in evidence, we can not say the verdict is unauthorized. And in this connection we might say, that while we have declined to consider that bill which refers to admitting testimony in regard to admitting the truss in evidence, that had it been excluded it could and would not have changed the result. The vest and the undershirt were properly admitted, and these would make this connecting link as complete and as forceful as does the evidence with the truss therein.

There being no error in the record that we can sustain, the law giving to the juries the right to pass on the credibility of the witnesses and the weight to be given to their testimony, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### June 26, 1912.

HARPER, JUDGE.—This case was affirmed at a former day of this term, and appellant has filed a lengthy motion for rehearing, in one ground of which he assails the statement in the original opinion wherein we said: "Sheriff Scarborough says he returned the next day and again searched the trunk; other witnesses would place it some days later." The criticism is that Sheriff Scarborough does not use the language we used in the opinion, and the inference is unauthorized that he searched the trunk on the next day. While we always try to be as brief as possible, yet when a statement is questioned we feel that we should copy the testimony, or that portion relating thereto. He testified:

"I arrested Andrew Harris on the 26th. Yes, sir, after that me and Mr. Craig went over there and made a search of his house; I don't remember when it was that we made a search of his house,

whether it was the next day after I carried him from Carmine to the Giddings jail, but I think I came back the next day on the evening train. Emma Nickerson lived there at the house where Andrew Harris lived. Yes, sir, Lonnie Nickerson lived there too.

"In the search that me and Sam Craig made we found an undershirt in the bottom of the trunk; there were men clothing in that trunk. Yes, sir, we found a pair of pants just like this one with Andrew Harris' name on them (referring to pants handed him by counsel).

"Yes, sir, I found blood stains on that undershirt (referring to undershirt handed him by counsel and which has been introduced in evidence). I can see some of the stains there now; Dr. Suehs cut that piece out (indicating to the sleeve of the undershirt), he cut it out to make a test for human blood. Yes, sir, we found something else at that search; we found a jumper. Yes, sir, the shirt and jumper, in my opinion, had been washed. Yes, sir, found some stains on the jumper; found the jumper in a room, sort of kitchen, a sort of closet-like room. Yes, sir, I can see blood stains on that jumper now (referring to jumper handed him by counsel and which has been introduced in evidence); I taken it to be blood stains. I taken a pair of pants off of the defendant after he was arrested. Yes, sir, those are the pants that I took off of him (referring to pants handed him by counsel); yes, sir, one leg cut off or torn off; yes, sir, there was blood stains on the pants.

"Here is one on the hip pocket; it is not as plain now as it was then; yes, sir, there is a piece cut out of these pants; Dr. Suehs cut that out; it was cut out to determine what sort of blood it was.

"Yes, sir, I took some shoes off of him; yes, sir, that looks like the shoes I took off of him (referring to shoes handed him by counsel). As to what was the appearance of those shoes when I took them off, will say, there was blood on them, looked like they had been rubbed, washed; yes, sir, appearance of blood stains on the shoe now, you can see right along there (indicating).

"Shoes referred to above offered in evidence, and marked 'Exhibit 10' by the stenographer, and made a part of this record.

"That's the hat he had on his head (referring to hat handed him by counsel). There was one stain on that hat somewhere that looked like blood, right on the brim; it was plainer then than it is now.

"Yes, sir, I saw that gun before (handing witness gun that has been introduced in evidence); got it out of Andrew Harris' house; it had stain of blood on it; it's right there (indicating). As to what was the appearance of that gun when we found it, will say, when we got this gun it had right recently been rubbed up and oiled, oiled in here (indicating) and all around in different places, and it looked like it had been freshly shot; as to how I know it had been freshly shot, will say, because you could twist a handkerchief in the barrel or stick your finger in there and they would be black; yes, sir, I did

that, and I got fresh powder on my handkerchief, left the handkerchief black; the other gun was rusty, looked like it hadn't been used for a long time, the barrel was rusty."

It will be seen he says: "I arrested Andrew Harris on the 26th," and he and Mr. Craig went over there and searched the house; that he did not remember when it was he made the search, but thought he came back the next day on the evening train, and in that search he and Mr. Craig found the undershirt in the bottom of the trunk. If any other conclusion can be drawn from Mr. Scarborough's testimony than as stated in the original opinion, we fail to see how it can be done. It is true, other witnesses place the search at a later date, and we so stated in the original opinion. The sheriff further testified: "If Mr. Craig swore it was a week after that, I think he was mistaken." In the original opinion we stated what both witnesses testified, while appellant's counsel would have us find as a fact that Mr. Craig testified to the truth, while Mr. Scarborough was mistaken. Doubtless this is the view appellant's counsel takes of the case, but we are not supposed to have any bias, and to give what each witness states, and permit the jury in passing on the case the right to judge of the differences in the testimony of witness. It is not for us to so do.

The next contention of appellant is that we erred in holding the vest, undershirt, etc., admissible in evidence. The witness Mrs. Louise Koch testified:

"Yes, I was present at Andrew Harris' house at the time some officers were there; it was Sam Craig, Mr. Adolph Krueger and Fritz Homeyer; my sister-in-law was there, Mrs. John Weyand; yes, that's the lady that has just gone out of there. Yes, those officers, in my presence, searched a trunk; there was mens' clothing in that trunk. Yes, they found something in that trunk that I recognized as belonging to someone—a vest; yes, I had seen that vest before; as soon as I saw the vest I said it was Mr. Rudolph's vest. Yes, this is the vest they found (referring to vest handed her ·by counsel). Mr. Rudolph had a coat like that vest; no, he didn't have any pants to match the coat and vest; yes, I saw him wear the coat and vest when he went to church or to visit somewhere, or somebody was there to visit him; I couldn't tell you how long he had had that coat and vest; I don't know where he bought it."

The witness Mrs. John Weyand testified: "Yes, sir, I was with the officers at the time they made a search of the trunk at the house of Andrew Harris; Mr. Krueger, Mr. Homeyer and Mr. Craig made that search; Mrs. John Koch, and I think brother John was present. Yes, sir, there was something found in that trunk that I recognized as being the property of Mr. Rudolph; it was a vest; I can recognize that as my father's vest (referring to vest handed her by counsel and which has been introduced in evidence) as the vest belonging to Mr. Rudolph; yes, sir, I recognize this vest as belonging to some-

body, I recognize it as being my father's vest; no, there was nothing else taken out of that trunk that I recognized that day as belonging to my father; yes, sir, I saw the other articles that were taken out of the trunk. Yes, sir, my father was in the habit of carrying something in the pocket of his vest, it was some matches, in the left vest pocket; yes, sir, when we found the vest there was some matches in the left-hand pocket; yes, sir, he was in the habit of carrying something else in some of the pockets, it was cigars; he carried cigars in the inside pocket; he carried them in this inside pocket (illustrating to the jury), that is tobacco in there (referring to the pocket); it came off of cigars, I suppose."

John Koch testified: "Yes, I have seen that vest before. I saw it when my papa had it on, Mr. John Rudolph." Adolph Krueger testified: "I live at Carmine; yes, sir, lived up there in 1909; I was deputy sheriff at that time. Yes, sir, I have heard of that burning down there at Mr. Rudolph's house. Yes, sir, I made a search of Andrew Harris' house in company with Mr. Craig and Mr. Homeyer; it was the next morning after Andrew Harris was arrested; yes, sir, Mrs. Koch was present; I found a vest in there and some clothes. I searched the trunk. Yes, sir, we found a black pair of pants in that trunk, but I didn't see his name on them at that time. Yes, sir, that is the vest I found (handing witness vest that had been introduced in evidence). . . . Yes, sir, the first time we examined the house was the morning after the defendant was arrested; yes, sir, there was some officers there and searched besides myself; Bud Sanders was there and Sam Craig; I went through the trunk really myself; they was standing by the side; yes, sir, I took everything out of that trunk—everything that was in it; there was some undershirts in there, never noticed whether any blood on them or not; yes, sir, picked each article out; yes, sir, I was examining for the purpose to see whether any of that stuff belonged to Mr. Rudolph, and also for any evidence of the crime; I don't remember of seeing an undershirt that was afterwards found with blood on it, some undershirts there similar like that one, similar to the thick-sleeve undershirt, the one that they found; I don't know how many we found the first search, two or three of them in there, I never counted them all; no, sir, I didn't examine them—just taken them out and just looked at them and laid them down. No, sir, I didn't find any undershirt with blood on it at the time I, Sam Craig and Bud Sanders investigated that trunk."

Sam Craig testified: "Yes, sir, I was present when the defendant's premises were searched the first time; he was arrested the night before; night before I searched the room; the search was made by myself, Mr. Sanders and Mr. Homeyer. I would not be positive about whether Mr. Adolph Krueger was there or not. I am not positive that Mr. Krueger was there the first search. As to what we found in the first search will say, it seems to me there, if I am not

mistaken, I think the vest was taken out of the trunk; found also some guns, two Winchesters, shotgun and a pistol; the Winchesters were standing up behind the door like in a kind of a scabbard made out of cloth—oilcloth; I don't remember now whether the two Winchesters and the shotgun were together or not; the pistol was laying upon a kind of desk-like thing—dresser, I suppose. Emma and Lonnie Nickerson lived with Andrew Harris at that time. Mr. Krueger searched the trunk; yes, I was there when it was searched; I ain't positive whether that trunk was in the east room or the west room; yes, sir, the trunk was in the room where I found the guns; yes, sir, there was a bed in that room.

"Yes, sir, there was a second search made; I don't know exactly how long it was after he was arrested, about a week, something like that.

"Yes, sir, found a pair of pants in the trunk in the first search; yes, sir, I think them is the same pants (referring to pants handed witness by counsel) we found there; yes, sir, we found mens' clothes in that trunk. Yes, sir, the pants that we found in the trunk have Andrew Harris' name on them.

"Mr. Scarborough was there at the second search; I don't remember whether Mr. Sanders was there; found the undershirt and jumper at that time we found the undershirt in the trunk; found the jumper in the kitchen or dining-room, all one room, hanging up on a nail behind the door. Yes, sir, I think that's the vest we found in the first search. Yes, sir, that is the undershirt and jumper.

"Found blood stains on that handkerchief; found blood on the jumper; yes, I think that is the shirt we found in the trunk in the second search. Yes, sir, we cut that piece out of there for Dr. Suehs at Carmine, for him to analyze for human blood, to see whether it was human blood; yes, sir, Dr. Suehs did that; yes, sir, the stains are darker now than they were when this happened; yes, sir, found some blood stains on the jumper; yes, the blood stain is darker now than it was when I first found it. My opinion was that the undershirt and jumper had been washed, I couldn't tell. Yes, sir, found some blood stains on one of these Winchesters; yes, sir, those are the two guns we found in the house (referring to guns handed witness by counsel); there is a blood stain on this gun right under here (indicating) under the bottom of the gun; the appearance of that gun seemed to have been oiled; the appearance of the other gun was rusty —rough."

The testimony of Sheriff Scarborough has heretofore been herein copied. It will be seen that the witnesses say that Mr. Krueger took the things out of the trunk the morning after defendant was arrested when the vest was identified as belonging to one of the deceased; that he says, "I was examining for the purpose of seeing whether any of that stuff belonged to Mr. Krueger and for any evidence of crime." He furthermore says he found two or three undershirts in

that trunk, and they were similar to the thick-sleeve undershirt, which was later gotten out of the trunk by Sheriff Scarborough. It is true he and Mr. Craig did not notice any blood stains on the undershirt, but from his testimony they were, in the main, looking for things belonging to deceased. Mr. Scarborough returns and searches this same trunk and finds an undershirt with blood on it, and Mr. Krueger says an undershirt of that kind was in the trunk when the first search was made. Sheriff Scarborough thinks it was the next day. Mr. Craig says he does not know how long after the first search, but estimates it about a week or something like that. As held in the original opinion, the vest was clearly admissible in evidence. As to the evidence about finding the undershirt, one like the one with blood on it being seen in the trunk at the time the first search was made, immediately after defendant's arrest, the fact that those first seeing the undershirts in the trunk did not notice blood on any of them, while Sheriff Scarborough later finds blood on one of them, would go to the weight to be given to it as testimony and not to its admissibility.

The next ground in the motion complains because we held that bills of exception eight and eleven would not be considered in passing on the case, although discussed in the original opinion, and in the motion for rehearing it is insisted that we, having gone to the statement of facts and said, if the question was presented in a way we could consider it we would hold the truss inadmissible in evidence, should reverse the case.

Let's see: The motion made was to strike out the testimony of Sam Craig (bill No. 8) in reference to the vest, the undershirt and jumper, and the finding of the truss. Mr. Craig did not testify anything about finding the truss. He says he was not there when the truss was found, and we have held the other articles admissible. So if we should consider this bill, it would present no error, and the court did not err in refusing to sustain the motion to strike out Mr. Craig's testimony. Mr. Krueger testified he was not present when the second search was made, and, therefore, was not present when Mr. Scarborough took out the undershirt with blood on it and found the jumper. However, he says he was present when the vest and truss were found. If the court had sustained the motion, the testimony of Mrs. Koch and Mrs. Weyand and Sheriff Scarborough would still have been in the record as there was no motion to strike out their testimony. All this testimony had gone in without objection, and the testimony of the witnesses who saw the vest found in the trunk and identified as the vest of deceased would still have been in evidence to be considered by the jury. There was no motion made to exclude the testimony of Sheriff Scarborough, and no motion made to exclude the testimony of other witnesses who testified to finding these other things. As before stated, all this testimony was admitted without objection, so far as this record discloses, and if the court had

sustained the two motions, testimony as to the finding of each and every one of these articles would still be in the record, and would have been before the jury for their consideration in passing on the case. As the evidence had gone in without objection, a motion made to strike out the testimony of only one or two witnesses, leaving the testimony of a number of other witnesses to the same facts in the record, if we considered the bills there would be no such error as should or would result in a reversal of the case. In the case of Wagner v. State, 53 Texas Crim. Rep., 307, it was ·held by this court that "it is well settled in this State that the erroneous admission of testimony is not cause for reversal if the same fact is proven by other testimony," citing Rogers v. State, 26 Texas Crim. App., 404; Walker v. State, 17 Texas Crim. App., 16; Johnson v. State, 26 S. W. Rep., 504; Stephens v. State, 26 S. W. Rep., 728; Logan v. State, 17 Texas Crim. App., 50; West v. State, 2 Texas Crim. App., 460, and Carlisle v. State, 37 Texas Crim. Rep., 108. However, the bills are subject to the objections stated in the original opinion, and we have only discussed them at the earnest solicitation of counsel for appellant, for they present the case as if the court had sustained their motion to strike out the testimony of Craig and Krueger in regard to these articles, that there would ·have been no testimony connecting defendant with them. However, by reference to the testimony of Mrs. Koch, Mrs. Weyand and Sheriff Scarborough, herein copied, and the other testimony in the case, the same case would have ·been presented to the jury, by the testimony admitted without objection, with only two witnesses less swearing to the facts, and this could make no material difference, because no witness swore to a different state of facts in regard to these articles.

The only other matter in the record relates to the sufficiency of the evidence to sustain the verdict. We have again carefully read the evidence, and while it is a case of circumstantial evidence, yet, taking appellant's words, conduct and acts on the morning after the burning and murder, and his conduct and acts throughout that day, together with the circumstances detailed by the witnesses above named, and that Dr. Suehs says it was human blood· on those garments, and the other circumstances in evidence, we think the testimony sufficient to support the finding of the jury. The fact that the vest, which is identified by three witnesses as the vest of one of the deceased, was found in appellant's trunk, and there being no explanation in the record of his possession of this vest, is a strong and material circumstance, and of the admissibility of this vest in evidence there can be no question. All the argument of counsel as to the sufficiency of the evidence was doubtless presented to the jury with equal or more force than here presented, and the jury finds against that contention.

It is true that every person in this State, white or black, as stated by appellant, is entitled to a fair and legal trial. But what is a

fair and legal trial? When testimony is offered by the State or the defendant, and no objection is made to its admissibility, neither the trial court nor this court can make objections to it; nor can we review the testimony in this respect without objection having been made. And the testimony having been admitted without objection, if it is desired subsequently to exclude it, a *legal motion* must be made to accomplish that purpose. If a motion insufficient legally is made, it must be treated as though no motion had been made.

We wish to state here that it has been made to appear to us that the able counsel for appellant, on account of sickness and other causes, were prevented from themselves preparing the bills of exception, and were compelled to depend upon one not an attorney to prepare them. It is to be regretted that counsel, through no fault of their own, were prevented from preparing their bills and presenting the matter as they desired, yet this does not authorize us to step beyond the bounds of law and consider matters not legally before us.

The motion for rehearing is overruled.

*Overruled.*

DAVIDSON, PRESIDING JUDGE (dissenting).—After a more careful review of this record in connection with the motion for rehearing I am fully persuaded that the affirmance is wrong. The affirmance seems to be predicated upon a resort to *"technicalities"* by my brethren to get away from the force and effect of the bills of exceptions reserved by appellant. In other words, because the bills of exceptions are not in harmony with the strictest rule of *technicalities,* therefore the bills of exceptions must be excluded. The fundamental rule with reference to bills of exceptions seems to be well settled and understood, that is, that the bills of exceptions taken to the ruling of the court must be sufficient to bring before this court on appeal the questions to be revised and sufficiently so to make it intelligible and to manifest to this court the error. This court has not undertaken, as I understand the rule, to specify just the exact language or formula for a bill of exceptions or what it shall contain further than that it must recite sufficiently the matter of which complaint is made and the reasons why the complaint is made so that this court may readily comprehend the question at issue. The decisions might be scanned, criticised, reviewed and explored and here and there find some that are more technical in construction than others, but through them all runs the general proposition that if the bill makes sufficiently plain the matter sought to be reviewed so that this court can, without recourse to other parts of the record, intelligently understand the question, then the bills of exceptions are sufficient. This rule, as I understand, finds its strength and support in the further proposition that on the appeal the rulings of the trial court are supposed to be correct and the party assailing those rulings must manifest to this court in some appropriate way the supposed error and, at least, place

it before this court in such manner that this court will understand the precise question about which the complaint is made. It will be observed in this case that the rulings of the majority is extremely "technical" in construing the bills of exceptions adversely to the accused.

Bill of exceptions No. 8 recites that after the witness Sam Craig had testified to different searches made, appellant moved the court to strike out the testimony of Mr. Craig in reference to finding the vest in the trunk the morning after defendant was arrested; also in reference to finding an undershirt and jumper at a second search of that trunk, after a first search had already been made and the articles were not in the trunk; also with reference to a third search when they found a truss after a first and second search had already been made, the defendant then being in jail in a different county during the time each and every one of these searches were being made, and, therefore, could not be responsible for the action of anyone else in going to and putting articles in the trunk in his absence; and if it was done it would lay a predicate for the purpose of manufacturing testimony against any man charged with a crime, and especially so when the defendant was in jail. Appellant excepted because the court would not withdraw all of this testimony from the jury.

Another bill recites that after the witness Adolph Krueger had testified in regard to the different searches made, the defendant, by counsel, moved the court to strike out his testimony and to strike out the testimony of Mr. Koch with reference to finding the vest at the first search the next morning after defendant was arrested and in jail in a different county; and further, to strike out the testimony in reference to finding a truss in the same trunk in which he found the vest some ten days or two weeks after defendant was arrested and in jail in another county, for the reason that defendant could not be responsible for the action of anybody else in going to and putting articles in the trunk in his absence, he being in jail at the time the searches were made. I think these bills sufficiently show that these articles were placed in the trunk after the defendant was arrested and carried away to another county and placed in jail and in his absence and after the testimony was all in the second bill asked the court to exclude the testimony of all these witnesses with reference to those subsequent searches that ranged from two or three days to ten days or two weeks after the first search and while the defendant was in jail. These bills are sufficient, though not fully in accord with strictest rules of *technicalities.* They fully manifest the error.

Again, the evidence, in my opinion, is not sufficient to support this conviction. There is the very slightest possible evidence of appellant having anything to do with this transaction if the searches and manufactured evidence above mentioned are eliminated. The evidence shows that the homicide occurred at night and the house was burned, thus destroying almost entirely the bodies of the two

deceased persons. By circumstances the State was enabled to show that the deceased parties may have been murdered, or at least killed. The next morning there was a trunk investigated, supposed to be appellant's. One article was found that was supposed to have had blood on it. This was all the evidence they could find in the trunk. This occurred in Washington County. Appellant was arrested and carried to Lee County and placed in jail. While he was in jail the sheriff returned from Lee County and he and others went to a house where defendant lived and into the same trunk and found articles that some of the witnesses testified belonged to one of the deceased parties. This was criminative evidence against defendant if he had even been shown to have had any connection with the articles. That he placed them in the trunk can not be claimed; they were not in the trunk when he was arrested and he was carried away. Somebody else placed those things in the trunk after appellant's arrest. The State, of course, did not undertake to connect appellant with the fact that they were placed there; in fact, the evidence excluded any idea that he was connected with these articles. Here then we have coming from the State clear and unequivocal manufactured testimony of cogent character against the accused, manufactured by somebody and used by the State for the purpose of connecting this appellant with that homicide. This was not only inadmissible, as I think is sufficiently shown by the bill of exceptions properly reserved, but it is testimony upon which a conviction can not be predicated, although introduced. Manufactured testimony against an accused, where the facts show it to be manufactured, is not criminative against an accused person when it is beyond his power to have had anything to do with it. This testimony was, under this record, made up from some source against the appellant. Who placed these articles in the trunk may not have been shown, but it is definitely shown that appellant did not, and here the State is permitted to take advantage of its own wrong by the use of manufactured testimony to convict a man of murder and testimony with which he had no connection and with which the State positively showed that he did not. I do not care to amplify this matter. I do not believe it to be the law now or heretofore, or ought to be the law, that a man can be convicted on the manufactured testimony, incriminative of the accused, when it comes from his enemies, or the adverse party and when it is shown that it was impossible for him to have been connected with it. To sustain a conviction upon this character of testimony would authorize the conviction of any man, however innocent he may be, by reason of the fact that his enemies may have manufactured testimony against him. I, therefore, respectfully dissent.