## W. W. FUNSTON v. THE STATE.

No. 14306.    Delivered April 29, 1931.

The opinion states the case.

*Reynolds & Heare,* of Shamrock, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is transporting intoxicating liquor; the punishment, confinement in the penitentiary for two and one-half years.

Officers saw appellant driving his car away from the home of Bert Clark. After appellant had driven the car approximately 200 feet the officers stopped him and asked permission to search. Appellant having consented to the search, got out of the car, opened the right-hand door, took out three pint bottles of whisky and broke them. A search of the car disclosed some empty whisky flasks and some ordinary paper sacks. One of the officers ran his hand over appellant's body to see if he had a gun. He noticed a knot on each side of appellant, but made no further investigation after appellant had stated that he was ruptured and had on a truss. Appellant was arrested and placed in the car of one of the officers for the purpose of taking him to jail. The other officer drove appellant's car. After they had driven approximately 10 miles and within about 15 minutes after the arrest appellant stated to the officer with whom he was driving that he had eaten some liver and onions, and was sick, and requested that he be permitted to leave the car for the purpose of answering a call of nature. Immediately upon stepping out of the car appellant unbuttoned his overalls, reached down to the place where he said he was wearing a truss, took out a pint bottle of whisky in each hand, and proceeded to break both bottles. A further search of the car disclosed another bottle with whisky in it. Appellant testified, in substance, as follows: He lived in Raydon, Okla. He had come into Texas for the purpose of selling cream separators. On the evening before his arrest he had loaned his automobile to Bud Adair. Adair kept the car about two and one-half hours before he returned it to appellant. About ten o'clock the next morning appellant started to Allison. Adair did not accompany him, having gone on with someone else. Going through Allison, appellant drove five or six miles to Mr. Tips' place for the purpose of selling a cream separator. He then drove back to the Bert Clark place which was a mile from Allison. He stopped his motor at Clark's place and later had to crank his car. Clark was not at home. As he took the crank out of the automobile it hung on an old sweater. He found five bottles wrapped up in the sweater, which he took to be

whisky. The sweater looked like one he had seen Bud Adair wearing. After cranking the car appellant drove about 200 feet before being stopped by the officers. At this point we quote appellant's testimony as follows: "I did not know at that time there was a pint bottle partially filled with whisky behind the seat in that car; nor did I at any time know there was a box of rubbers up behind the seat of the car. The officers arrested me there at that time. I broke 3 pint bottles of whisky there on the running board. The reason I did that was that I had heard people say if they caught you with the whisky, and you broke it you would break the evidence. I thought it was whisky in those bottles at that time,—I was pretty sure it was, and that was my reason for breaking them. That was not my whisky, and I did not have it there for the purpose of sale. I did transport it there about 150 feet. I did not know at the time I left Reydon that morning there was whisky in the car, and the first time I knew it was when I pulled the crank from under the sweater and hung. it on the sweater, and I heard the bottles rattle."

On cross-examination by the State, appellant testified that he broke the whisky he was carrying under his overalls for the purpose of destroying the evidence. He gave no reason for having hidden the two pint bottles in his clothing.

Bills of exception 1 to 5, inclusive, relate to appellant's objection to the testimony of the officers touching his act in breaking two pints of whisky while he was being carried to jail, and, further, are concerned with the action of the court in permitting the officers to testify that appellant advised them, in substance, before breaking the whisky that it was necessary that he leave the car for the purpose of answering a call of nature. The specific objection was that the provisions of Art. 727, C. C. P., relating to confessions while under arrest had not been complied with. It is recited in the bills that the parties had driven approximately 6 miles from the scene of the arrest, and that appellant's act in breaking the liquor and his statement in connection therewith occurred about 10 minutes after his arrest. The opinion is expressed that the objections were properly overruled. Statements made while under arrest, if properly part of the res gestae, are not affected by the rule rejecting confessions while in custody. We deem the statement made by appellant within the rule of res gestae. Wright v. State, 111 Texas Crim. Rep., 240, 13 S. W. (2d) 111.

As to appellant's act in breaking the whisky the rule laid down in Underhill's Criminal Evidence, 3rd Edition, section 163, and quoted with approval in Wright v. State, supra, is applicable. We quote: "Thus it may be shown that he attempted to escape, or fled from justice or that he destroyed evidence or endeavored to fabricate evidence. Such facts may, with correctness, be assumed to form a part of the res gestae, though not contemporaneous with the principal transaction. If this is

so, there can be no impropriety in receiving the declarations accompanying them." In Kelly v. State, 102 Texas Crim. Rep., 395, 278 S. W., 449, a similar situation arose. The accused had been arrested and was being taken to jail. While enroute to jail in an automobile, he seized a pair of pliers and broke one of the fruit jars containing the whisky. The trial court permitted the State to prove the act of the accused over his objection that he was under arrest. This court held that the objection was not tenable, and said that it would be a remarkable situation if an accused should be permitted to destroy the evidence against him, and then deny the State the right to prove such destruction by merely showing that he was under arrest at the time. The conclusion was reached that the fact that the accused was under arrest afforded no reason for refusing the testimony that he destroyed the evidence.

It is recited in bill of exception No. 6 that appellant testified that Bud Adair, after returning appellant's automobile, had arranged to go with appellant to Allison on the following morning. After making this statement appellant offered to testify that Bud Adair told him (appellant) about 8 o'clock in the morning that he would not wait for him, but would go in a car with another man, and meet him (appellant) in Allison. Over the State's objection appellant was not permitted to prove what Adair said to him. It is stated in the bill of exception that appellant offered the testimony for the purpose of showing all the facts and circumstances relative to his relationship with Bud Adair, and as showing the opportunity which Adair had to place whisky in the car, with the probable intention of having the same transported to Allison, and there securing same. It is further stated in the bill that it was appellant's defensive theory that someone else had placed the whisky in his car and that he did not know that same was there until he discovered it at Clark's place. We are unable to perceive the relevancy of the proffered statement. Appellant admitted that he knowingly transported the whisky. If Adair had placed the liquor in the car appellant would not have been excused. Appellant takes the position that the enhanced penalty was probably assessed because the jury believed the whisky belonged to him and that his story concerning Adair's connection with appellant's automobile was untrue. It is observed that appellant was permitted to testify fully to his relationship with Adair and his loan of his automobile to him on the evening preceding the search. On page 18 of the statement of facts we find the following statement made by appellant on his direct examination: "It was about 10 o'clock the next morning when I started to Allison as near as I can tell. However, Adair did not go to Allison with me. He went with someone else. I do not know who; he left about 8 o'clock that morning. I did not see him leave, but I thought I heard the car leaving, which was right after I had the conversation with him." Under the circumstances, we do not think the statement

that Adair told appellant he was going to leave ahead of him with another man, and would meet him in Allison, could have been of benefit to appellant. Such statement was calculated to impress the jury with the view that appellant and Adair were acting together in transporting the whisky.

Bill of exception No. 7 presents the following occurrence: After it had been shown by state's witnesses that appellant was arrested within a short distance of the home of Bert Clark and that whisky had been found in his car, appellant offered to testify that he was at Mr. Clark's place for the purpose of attempting to collect some money Mr. Clark owed him. Upon objection by the State the statement was rejected. It is recited in the bill of exception that it was contended by the State that appellant was on a bootlegging expedition into Texas, transporting and possessing whisky for the purpose of sale; and that it was appellant's theory that he did not discover the whisky in his car until he had reached Mr. Clark's place, where he had gone on a lawful mission. We are unable to determine from the bill of exception how the testimony could have been of benefit to appellant. As far as the recitals in the bill are concerned, he did not offer to testify as to the nature of the transaction out of which the debt grew. The statement that Mr. Clark owed him some money which he was attempting to collect, standing alone, when viewed in the light of the testimony of the state to the effect that appellant had a quantity of liquor in his car, was calculated to lead the jury to believe that Clark owed appellant for whisky. Although appellant had testified that he was engaged in the business of selling cream separators, he did not offer to state whether Mr. Clark owed him money for cream separators. Appellant testified, as shown in the statement of facts on page 18, that he had gone to Mr. Tips' place before going to Clark's residence, to see about selling Tips a cream separator. He followed this with the statement that he went back by Clark's place but found that he was not at home. If the testimony relative to appellant's purpose in visiting Tips on the morning in question did not convince the jury that appellant was on a lawful mission, it would appear that the statement that Clark owed him money, without any explanation as to how the debt arose, would have added little weight to the testimony already in the record. While expressing the view that the learned trial judge should have permitted appellant to make the statement in question, we are unable to reach the conclusion that its rejection contributed to the assessment of a penalty in excess of the minimum.

Bill of exception No. 8 recites that appellant was not permitted to testify that he had in his car at the time of his arrest some small cream separator parts and rubbers for cream separators. If the court rejected this testimony, he evidently relented and thereafter permitted the statement to be made to the jury. On page 23 of the statement of facts we

find the following testimony on the part of appellant: "The reason I had the paper sacks in the back end of the car was, that people along the road frequently stopped me and wanted cream separator rings and parts, and I would drop them along. I had those parts with me in the car at that time."

Bill of exception No. 11 recites that appellant placed in issue his general reputation for being a peaceable and law-abiding citizen, and that John Porter, sheriff, testified that he knew appellant's reputation in the community in which he resided for being a peaceable and law-abiding citizen, and that it was bad. It is set out in the bill as a ground of objection that it had not been shown that the witness knew the general reputation of appellant in the respect mentioned. There is nothing in the bill in verification of the objection. In his brief appellant confesses that the bill of exception is defective and requests us to look to the statement of facts for the purpose of determining whether a sufficient predicate was laid. This court will not ordinarily look to the statement of facts to aid a bill of exception. Branch's Annotated, Texas Penal Code, Section 213; Harris v. State, 67 Texas Crim. Rep., 251, 148 S. W., 1074. A mere statement of a ground of objection is not a certificate on the part of the trial judge that the facts which form the basis of the objection are true; it merely shows that such an objection was made. Branch's Annotated Texas Penal Code, Section 209; Buchanan v. State, 107 Texas Crim. Rep., 559, 298 S. W., 569.

We have discussed all questions briefed by appellant, and have carefully examined other matters presented by the record, but not briefed. The opinion is expressed that the record fails to manifest reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.