### F. H. MANNING v. THE STATE.

No. 3379.   Decided March 21, 1906.

**1.—Murder in First Degree—Declaration of Defendant.**

Upon trial for murder there was no error in admitting the testimony of a witness relative to a conversation said witness had with defendant shortly before the homicide in the absence of deceased.

**2.—Same—Confession of Defendant—Res Gestae.**

Where upon trial for murder the objectionable part of the witness' testimony as to the confession of the defendant was excluded from the jury and the rest constituted res gestæ, there was no error.

**3.—Same—Threats of Defendant.**

Upon trial for murder there was no error to admit declarations of defendant against the deceased in which he threatened to lay him low.

**4.—Charge of Court—Express Malice.**

Upon trial for murder there was no error in the court's charge in his definition of express malice, when construed with the rest of the court's charge.

**5.—Same—Implied Malice—Deadly Weapon—Harmless Error.**

Where upon trial for murder, there was no controversy that the defendant used a deadly weapon in a most deadly manner, there was no harm in the court's abstract charge on the instrument used that if the instrument was not likely to produce death it was not to be presumed that death was designed, etc.

**6.—Same—Adequate Cause—Charge of Court.**

Where upon trial for murder the court in his definition of implied malice did

not in that connection define adequate cause, but did so define it in his charge on manslaughter, there was no error.

**7.—Same—Murder in Second Degree—Manslaughter.**

Where upon trial for murder, the court charged on murder in the second degree and manslaughter, and did not define adequate cause in his charge on murder in the second degree, and the jury found defendant guilty of murder in the first degree under a proper charge of the court, the jury could not have confused the offense of murder in the second degree with that of manslaughter.

**8.—Cooling Time—Murder in First Degree—Favorable Charge.**

Where upon trial for murder, the court charged the jury upon murder in the first degree that the intent to kill must be formed in a cool, sedate and deliberate mind, and that if the intent to kill was not formed in such a state of mind, and sufficient cooling time had not elapsed for the mind to regain its wonted calmness, it could be no more than murder in the second degree; and the jury were also instructed upon murder in the second degree that under a certain state of facts the offense could not be greater than murder in the second degree, and also charged on manslaughter, the whole charge properly construed was beneficial to defendant.

**9.—Same—Harmless Error—Murder in Second Degree—Manslaughter.**

Where upon trial for murder, the court in one part of his charge on murder in second degree stated a case on the evidence which constituted adequate cause, and therefore should have charged manslaughter on such a state of facts, yet where the jury found defendant guilty of murder in the first degree, and there was nothing in the court's charge calculated to mislead the jury as between the two degrees, the error was harmless.

**10.—Same—Self-Defense—Charge of Court.**

Where upon trial for murder, there was nothing in the evidence which raised the issue of self-defense, but which the court, nevertheless, gave in correct form, there was no error.

**11.—Same—Former Conviction of Defendant.**

Where upon trial for murder, testimony that the defendant had been formerly indicted for an assault with intent to murder was excluded from the jury in a written charge, there was no error.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. E. B. Muse.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*J. E. Thomas,* for appellant.—On question of deadly weapon: Danforth v. State, 44 Texas Crim. Rep., 105; Burnett v. State, 46 Texas Crim. Rep., 116; Perry v. State, 44 Texas, 473; Spivey v. State, 77 S. W. Rep., 446.

*F. J. McCord,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; hence this appeal. This is the second appeal. See Manning v. State, 12 Texas Ct. Rep., 754.

It appears that both parties were employees at a saloon of one Maxwell, in the City of Dallas. The theory of the State was that the killing grew out of an altercation between deceased, A. Riddle, and

appellant, F. H. Manning, which occurred some two hours before the homicide; that appellant, whom it seems had a kept woman named Cammie, had previously made some remark in regard to the deceased and said Cammie; that deceased had insulted her, and would have to apologize; that deceased hearing of this on the morning of the homicide, and as stated, some two hours before it occurred, confronted appellant in the back room of the saloon, and accused him of making the remark above stated, and demanded that he apologize to him for having made said remark, and compelled him to get on his knees and apologize; that subsequent thereto, while deceased and Maxwell were looking over some whisky orders at the desk in the front of the saloon, appellant came up in the rear of deceased, presented a pistol and shot him in the back of the head, inflicting a wound from which he immediately died. It may be stated in this connection, that it was shown immediately after the altercation between appellant and deceased in the back room of the saloon, that appellant started to quit the service of his employer and so informed him, and stated that he did so because he was afraid deceased would kill him. Maxwell, his employer, told him that deceased would not bother him, if he would attend to his own business; and thereupon appellant resumed his employment and went about his work in the saloon. It was also shown that he and deceased subsequently engaged in a conversation in a friendly way. Appellant, according to his theory, relied on self-defense, manslaughter and murder in the second degree. His theories mainly arise from his own testimony. He claimed that a night or two before deceased was stopping women on the street, and that he told deceased he would get himself in trouble, by stopping some man's wife. It is also suggested that deceased may have accosted Cammie (appellant's kept woman) which affronted him. He states that sometime before the homicide (which according to his testimony may be established as one to two hours) deceased confronted him in the back room of the saloon with a drawn pistol, and cursed him, and told him that he had heard he expected him (deceased) to apologize to him (appellant) for some improper proposal to his woman Cammie; that now he would have to apologize to deceased, and compelled defendant to get on his knees and whacked him once or twice over the head with said pistol; and then poked the barrel of the pistol in his mouth, denounced appellant as a son of a bitch, and his mother as a bitch, and all negroes as whores, etc.; and compelled appellant to admit that this was true; that afterwards, appellant determined to leave the employment of Maxwell, because he was afraid of deceased, and so informed Maxwell; that Maxwell guaranteed him protection and he resumed his work in the saloon, cleaning jugs, etc. That while deceased and Maxwell were standing at the counter, near the jugs, looking over orders, in his work handling the jugs, he set a jug down brushing the leg of deceased, when deceased immediately cursed him for a yellow son of a bitch; that appellant thereupon reached back in

a drawer nearby, got a six-shooter out and shot deceased; that he thought deceased at the time was making some effort to get the pistol himself. He claims he was so excited that he did not know what transpired at the time or afterwards. The court in his charge presented murder in the first and second degrees, manslaughter and self-defense.

There was no error on the part of the court in admitting the testimony of the witness Maxwell, relative to a conversation said witness had in the morning with the defendant, in the absence of the deceased. Anything defendant said, bearing on or having relation to the homicide or shedding any light thereon was admissible in evidence regardless of the presence of the deceased at the time.

Appellant states in his motion for new trial that he excepted to what Parnell stated that appellant told him, after his arrest. This bill, as well as the others, is taken in the statement of facts, and it is difficult to determine what was excepted to. There was some testimony elicited in the absence of the jury that may have been improper; appellant not having been warned, if it was not a part of the res gestæ. We cannot determine that it was not a part of the res gestæ. The burden being on appellant to show the error of the court, the presumption is against appellant. It appears that, after the jury was brought back, appellant stated, as soon as the officer came up with him, "I have killed him." Officer says, "Who? Maxwell?" Appellant said, "No, Riddle." Officer said, "How do you know you killed him?" Appellant said, "I placed the gun back of his head and blowed his brains out." It appears that the witness without being asked further stated that defendant said, "Now they can hang me." We understand this expression was excluded by the court. The first part of the testimony is not shown to have not constituted a part of the res gestæ, and so was admissible.

Witness Guy Baron was asked, "If before the killing you heard defendant say anything about deceased, Riddle?" To which he replied, "Yes"; that he heard him say, while he was talking to another negro, "that he intended to lay Billie out." It was further shown that they called deceased Billie or Mr. Billie. At any rate the question here asked the witness was as to a declaration by appellant against deceased Riddle; and the answer appears to have been responsive to the question, and the threat seems to have been directed against appellant, as we gather from this meager statement included in the statement of facts as a so-called bill of exceptions. As presented we fail to see any error on the part of the court in admitting this testimony.

Various objections are urged to the charge. There is some criticism of the court's charge on express malice; that is, the court indulged in a lengthy definition of express malice, taken from the printed charge on this subject: the criticism being of certain expressions in said charge. Among other things, it is said that the court should not in such definition have stated as a part thereof, "Do the facts in the case

show such a general reckless disregard of human life of the person slain? If they do, the killing, if it amounts to murder, will be upon express malice." The contention is that there was nothing in the testimony suggesting such a charge. This, as stated, is a part of the general definition, and as such, if it had no application, would not constitute reversible error, as an abstract proposition, it is correct. Besides, there is some testimony in this case indicating appellant did have a reckless disregard of the life of the person slain; that is, if an express purpose to kill such person would be considered a disregard of such person's life. We think, taking the whole of this definition as to what it takes to constitute express malice, that the jury were carefully guarded on this subject; and taking the whole charge in consideration they understood what was meant when the court came to apply the law of express malice to the facts of the case.

The charge on implied malice is also criticised. Among other things the following portion thereof, which is a part of the general definition, is excepted to: "The instrument or means by which a homicide is committed are to be taken into consideration in judging the intent of the party offending. If the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." This language is to be found in our statute. See articles 51 and 717, Penal Code. But it will be seen that there is no application of this law given in the court's charge in applying the law to the facts of the case before the jury. The presumption from the use of a deadly weapon not being given in that conenction: Besides this there can be no question—it was not a matter of controversy on the trial—that appellant used a deadly weapon in a most deadly manner.

The charge of the court in defining implied malice is further criticised, as follows: "The court further charges you that the act of killing must be unlawful, and with implied malice aforethought, as implied malice has hereinbefore been defined to you. If the design to kill is formed in a mind excited by passion or disturbed by any inadequate cause, and cooling time has not elapsed before the execution of that design, the homicide would be of no greater magnitude than murder in the second degree. "The intent to kill must be formed in a mind that is cool, deliberate and sedate to constitute murder in the first degree. The intent to kill formed in a mind that is not cool, deliberate and sedate is not murder in the first degree, but, is murder of the second degree." The criticism here is, that adequate cause is not defined in this connection. We do not think it was necessary to have defined the same here, inasmuch as the court subsequently in the charge on manslaughter defined what constituted adequate cause.

Also, the court's charge in applying the law to the facts, in instructing the jury on murder in the second degree, is questioned. The language of this charge is as follows: "If you believe from the evidence beyond a reasonable doubt, that the defendant, with a deadly weapon

or instrument reasonably calculated and likely to produce death by the mode and manner of its use in a sudden transport of passion, aroused without an adequate cause, or while his mind was not in a cool, deliberate or sedate condition, and not in defense of himself against an unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury, with intent to kill, did shoot and thereby kill A. Riddle, as charged in the indictment, you will find him guilty of murder in the second degree," etc. And further: "If you believe from the evidence that the mind of the defendant was not cool, calm and sedate, and while in this condition he formed the determination to kill, and before cooling time had elapsed, carried into execution that design, the offense would not be greater than murder in the second degree." It is contended, in connection with this charge, that the defense of adequate cause should have been given. We make the observation here as above in regard to this matter. We would further state in this connection that, taking into consideration the subsequent charge of the court on manslaughter, the jury were not liable to confuse the offense of murder in the second degree with manslaughter. Moreover, not having found appellant guilty of murder in the second degree, we fail to see how it could have injuriously affected appellant, there being no contention that the mind of the jury might be confused between murder in the second degree and murder in the first degree, but merely between murder in the second degree and manslaughter. It might be that, if the jury had found appellant guilty of murder in the second degree, and it could be shown that the charge as between this offense and manslaughter was liable to confuse the jury, appellant might complain. Another objection urged to said charge is that the court told the jury that the offense under the circumstances was murder in the second degree, in the latter portion of said charge. We do not understand the charge to convey this idea. The jury were informed that the offense under the circumstances stated, could not be greater than murder in the second degree; they would construe that this charge, in connection with the subsequent charges on manslaughter, which measured appellant's rights as to both of said offenses, relieved the case of any possible confusion between the two offenses.

Nor do we believe that it was necessary for the court to have defined cooling time in this connection. As to murder in the first degree, the court had previously fully instructed the jury that the intent to kill must be formed in a cool, sedate and deliberate mind; and here the jury are instructed, if the intent to kill was not formed in such a state of mind, and sufficient cooling time had not elapsed for the mind to regain its wonted calmness, it could be no more than murder in the second degree. The jury having previously been told that the condition of appellant's mind must be absolutely cool and calm when the intent to kill was formed, they were not authorized to take into consideration at all in passing on murder of the first degree an intent to

kill formed in any other condition of mind, and executed subsequently after cooling time had elapsed. Nor do we understand appellant to make this criticism of the charge. His criticism is merely that the jury were liable to confuse appellant's rights between murder in the second degree and manslaughter. We do not believe appellant's rights in this respect were jeopardized: especially as the jury were merely told that the offense under the circumstances could not be greater than murder in the second degree, if cooling time had not elapsed. They were not told that it was absolutely murder in the second degree, but that the offense could not be greater than that; they were still left to apply to the homicide the charges subsequently given on manslaughter. This charge properly construed was beneficial to appellant in this regard. If appellant immediately after deceased had compelled him to get on his knees and apologize to him, at that time formed the intent to kill deceased, and his mind was then excited, and the jury should further believe that sufficient time had not elapsed for his mind to become cool, they could not possibly convict him of a higher grade of offense than murder in the second degree; in other words that they could not convict him of murder in the first degree. As stated above, the charge of the court having previously told the jury that they could only convict appellant of murder in the first degree, if they believed the intent to kill was formed in a cool and sedate and deliberate mind, and executed in such state of mind, appellant's rights were thoroughly protected against a conviction of that degree, if the intent to kill or the execution thereof, was formed in a mind perturbed or excited by passion.

We find this charge objected to: "If you believe from the evidence or have a reasonable doubt of the same, that the deceased, A. Riddle, on the day of the killing, and prior thereto, caused and forced the defendant to get down on his bended knees and apologize to him (Riddle), and that the said Riddle cursed and abused defendant and offered insults to defendant's mother, and insults to the negro race, and that this conduct on the part of said Riddle aroused in the mind of defendant either anger, rage or terror, and in that condition of mind the defendant formed the intent to kill deceased, and that sufficient time had not elapsed at the time of the killing (if any) to allow the mind of defendant to become cool and capable of calm reflection, you cannot find defendant guilty of any higher grade of homicide than murder in the second degree and you will so find." This charge is evidently incorrect. The circumstances detailed in the first part thereof would, in our opinion, constitute adequate cause, and if sufficient cooling time had not elapsed thereafter before the homicide, it would constitute manslaughter only and not murder in the second degree, which the jury were charged to find. But we do not believe that the effect of this charge, which was calculated to produce confusion between murder in the second degree and manslaughter, was injurious to appellant. The jury under the same state of facts, under

the charge of the court, were authorized to find appellant guilty of murder in the second degree or manslaughter. If they had found appellant guilty of murder in the second degree, there might be cause of complaint. However, they found appellant guilty of murder in the first degree, and there being no confusion and no charge of the court calculated to mislead the jury as between the two degrees, we fail to see how appellant can complain. The court in his charge on manslaughter not only gave as adequate cause, the treatment by deceased of appellant·on the morning of and preceding the homicide, but authorized the jury to consider all the facts and circumstances in the case bearing on that subject,·and in addition gave a charge predicated on insulting words or conduct of deceased toward the woman Cammie. We think said charge sufficiently covered every possible phase of the case and was all that appellant could require. As stated, the fact that the charges on murder in the second degree and manslaughter are somewhat confused, we do not believe makes any difference under the facts of this case and the finding by the jury.

The charge of the court on self-defense, in our opinion was not called for in this case. But if it be conceded that the same was required, then we believe it was a proper charge on that subject. With reference to the testimony adduced from defendant,. that he had been formerly indicted for an assault with intent to murder, it was excluded by the court from the consideration of the jury in a written charge. We think this was even better than limiting said testimony to the credibility of appellant. We do not believe that matters relating to the closing argument of the county attorney are sufficiently raised to require any review at our hands.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled November 23, 1907, without written opinion.]