## G. E. CLAYTON v. THE STATE.

### No. 4890. Decided February 13, 1918.

**1.—Murder—Jury and Jury Law—Special Venire.**

Where, upon trial of murder, the special venire was not drawn in accordance with the statute, article 661, C. C. P., and the court directed the sheriff to

select a sufficient number of jurors from the county at large to finish the number which was drawn, when there was a sufficient number of regular jurors for the term from which they could have been drawn from the box as special veniremen, the same was reversible error.

**2.—Same—Waiver—Death Penalty—Charge of Court.**

Where it was contended by the State that the district attorney waived the death penalty in a trial for murder, and that therefore a special venire was not required, but the record showed that challenges for cause were urged because of the question of conscientious scruples in awarding the death penalty, and the court submitted the punishment for murder by death or imprisonment, such contention was untenable. Besides, it is doubted whether the district attorney has the right to waive the verdict of the jury.

**3.—Same—Evidence—Knowledge of Defendant.**

In absence of knowledge by the defendant of the partial blindness of the deceased at the time of the homicide, testimony which showed that deceased was in this condition was inadmissible.

**4.—Same—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded upon other grounds, the overruling of the application for a continuance need not be discussed.

**5.—Same—Charge of Court—Requested Charges—Self-defense.**

The requested charge with reference to self-defense, which was refused by the court on the ground that it was covered by the main charge, differed therefrom and should have been given.

Appeal from the District Court of Uvalde. Tried below before the Hon. Joseph Jones.

Appeal from a conviction of murder; penalty, forty years imprisonment in the penitentiary.

The opinion states the case.

*L. Old* and *T. P. Hull,* for appellant.—On question of special venire: Oates v. State, 86 S. W. Rep., 769; Knight v. State, 66 Texas Crim. Rep., 335, 147 S. W. Rep., 268; Gabler v. State, 95 S. W. Rep., 521; Keith v. State, 94 id., 1044; Gibson v. State, 53 Texas Crim. Rep., 349, 110 S. W. Rep., 41; Moore v. State, 95 S. W. Rep., 514; Mays v. State, 96 id., 329.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of special venire: Weaver v. State, 19 Texas Crim. App., 547; Cahn v. State, 27 id., 709; Williams v. State, 29 id., 89; Weathersby v. State, 29 id., 278; Thompson v. State, 33 Texas Crim. Rep., 217; Deon v. State, 37 id., 506; Mays v. State, 50 id., 165.

DAVIDSON, Presiding Judge.—This conviction was for murder. When the indictment was returned on the 25th of October, 1917, appellant and the district attorney had an agreement to set the case for the 7th of November, and the district attorney to request the drawing of a special venire. The district attorney went away, and in accord-

ance with this agreement appellant's counsel presented this matter to the court. The court asked appellant's counsel if he would be ready for trial. He indicated he thought he would not be ready, therefore the court refused the request. On the 29th of October, however, the court, of its own motion, and it seems without the knowledge of appellant or his counsel, ordered the case set down for trial on the 7th of November and the drawing of a special venire, directing the manner and terms of such drawing. The bill of exceptions is quite lengthy, and all of the facts stated in the bill were agreed to by the district attorney and approved by the court. The substance of this bill shows as above indicated, and that the court directed the drawing of the regular jury for the third week of court, which began on the 5th of November, this case being set for the 7th of that month. This consisted of twenty-four names. The court also directed the sheriff to select a sufficient number of jurors from the county at large to finish the number ordered, which was forty-eight. The forty-eight then were to constitute the special venire. The twenty-four jurors for the third week of court, commencing on the 5th of November, were drawn from the box; the other twenty-four were not, and the sheriff filled out the special venire list with those he summoned from the county at large. It is also shown that the jury for the first week of court, commencing the 22nd of October, consisted of thirty-six jurors for the week; that they were empaneled for service but were discharged after one day's service. The jurors for the second week, commencing on the 29th of October, consisted of twenty-four jurors; they were empaneled and served one day and were discharged. As before stated, the jurors for the third week, commencing the 5th of November, consisted of twenty-four jurors. These added together would make a total number of eighty-four regular jurors for the term. The names of none of these jurors were placed in the box to be drawn as special veniremen, except those of the third week. There is no question of the above stated facts.

Appellant moved to quash the special venire because not drawn in accordance with the statute, and on further grounds. We are of opinion that the motion was timely taken and should have been sustained. Article 661, Code of Criminal Procedure, provides the manner of drawing a special venire. It provides that whenever the names of the persons selected by the jury commissioners to do jury service for the term shall have been drawn one time to answer summons to a venire facias, then the names of the persons selected by the commissioners, and which form the special venire list, shall be placed upon tickets of similar size and color of paper, and the tickets placed in a box and well shaken up. From this box the clerk, in the presence of the judge, in open court, shall draw the number of names required for further venire service, and shall prepare a list of such names, in the order in which they are drawn from the box, and attach such list to the writ, which is to be delivered to the sheriff; and it further provides it is the duty of the clerk to

prevent the name of any person from appearing more than twice on all of such lists. This article is in full force and effect, and it would seem not only by its terms but under the decisions to constitute the means of selecting special venires in counties other than those in which juries are drawn from a jury wheel. When this list has been made out as drawn in accordance with the above statute, it shall be delivered to the sheriff, who shall summon the jurors. There is no reason shown why this law should not have been followed and the jury drawn from the eighty-four jurors drawn for the term. It is shown and agreed that this was the only capital case on the docket, therefore none of the jurors could have served on any previous venire during that term. Under the terms of the statute, supra, the court was not justified in ordering the venire drawn and summoned as was done. This would in fact hardly be called a special venire. Only twenty-four names were placed upon the venire list handed the sheriff by the clerk out of the forty-eight. The twenty-four to be summoned by the sheriff were placed on the list subsequently; at least were not drawn by the clerk. There was no question of waiver on the part of the defendant. He urged his objections, but they were overruled. The court qualifies the bill, or makes the statement, that the district attorney waived the death penalty. We are not impressed with this as a reason for the manner of drawing the special venire. If there is any virtue in the waiver of the death penalty, that might have operated to excuse the drawing of the venire at all, but the writer is clearly of the opinion that the district attorney has no right to waive the verdict of the jury or a part of the legal penalty. He could have, with permission of the court, dismissed the prosecution against appellant as to murder and tried him for manslaughter, but this would not justify his waiving a part of the penalty for the offense for which he was being prosecuted. Life imprisonment is part of the punishment in capital cases. The jury may exercise their authority and power in awarding life imprisonment in place of the death penalty. It is an alternative punishment. But it did not operate to deprive defendant of his right to have a venire, and when we go to the record it is shown that challenges for cause were urged because of the questions of conscientious scruples in awarding the death penalty. It seemed to have been exercised with reference to four jurors. Submitting the punishment for murder the court instructed the jury that the punishment shall be by death, confinement in the penitentiary for life, or for any term of years not less than five, and told them if they should convict for murder they might fix his punishment at death or confinement in the penitentiary for life, or for any term of years not less than five. It is deemed unnecessary to review the authorities and the decisions of the court and the changes in legislative enactments during recent years. There have been quite a number of these changes, and the decisions have been changed, of course, to meet the amended legislation to conform the jurisprudence to these amend-

ments. From no viewpoint, as we understand this record, was a special venire drawn according to law. In fact, it may be said that the venire as drawn was not a legal one, and was not within the terms of any of the statutes. It was not one of those emergencies where no jurors had been drawn by the commissioners, therefore that statute had no application.

There is another question presented by bill of exceptions in regard to the admission of certain testimony which showed that the deceased was blind, or nearly so. The bill is not right clear and distinct, but if upon another trial this evidence is sought by the State, defendant's objection would be well taken unless he knew of the condition of the eyes of the deceased at the time of the homicide. If he was aware of the partial blindness of deceased at the time of the homicide, it would be admissible, otherwise it would not be. This knowledge may be shown from circumstances.

The application for a continuance is not discussed. It is not deemed necessary under the disposition of the case.

There are quite a lot of criticisms of the court's charge. We deem it unnecessary to go into an extended review of these matters. The charge is fairly well written. There may be some criticism of the charge on self-defense which seems to have some merit. To meet this appellant asked a special charge which, we think, should be given upon another trial, or the court's charge changed so as to conform with the matter set out in the requested instruction. We deem it unnecessary to discuss it. It is of no particular value to any other case except the instant case in view of another trial, but in the record it is known as special charge No. 2 requested by appellant. The court refused it because he says it was covered by the main charge. We are of opinion there is enough difference in this charge and that given by the court to have justified, if not required, the court to give the special instruction.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*