### STEVE BROWN v. THE STATE.

#### No. 5044. Decided May 22, 1918.

**1.—Murder—Evidence—Opinion of Witness—Bill of Exceptions.**

Where, upon trial of murder, a witness testified for the State that he took the deceased to be about sixty or sixty-five years old, that he was just an old, wornout negro, that he was all bunged up with rheumatism, this, under the facts of the case, is not reversible error. Besides, the bill of exceptions is defective in not setting out the surrounding facts showing the connection in which the evidence was admitted. Following Harris v. State, 67 Texas Crim. Rep., 251, and other cases.

**2.—Same—Bill of Exceptions—Legal Presumption.**

The legal presumption is in favor of the corrections of the trial court's ruling, and it is incumbent upon the appellant by the facts in his bill of exceptions to overcome this presumption. Following James v. State, 63 Texas Crim. Rep., 75.

**3.—Same—Evidence—Physical Condition of Deceased.**

Upon trial of murder there was no error in admitting in evidence the physical defects of deceased, in connection with the surrounding circumstances; besides, the bill of exceptions was defective and, moreover, if there was error it was harmless. Following Miller v. State, 31 Texas Crim. Rep., 609.

Appeal from the District Court of Kaufman. Tried below before the Hon. Joel R. Bond.

Appeal from a conviction or murder; penalty, death.

*Huffmaster & Huffmaster,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was convicted of the murder of George Jackson and the death penalty assessed against him.

His written confession was introduced, as follows: "I had been staying with George Jackson since last Monday. I bought some household goods from him and carried them away yesterday and sold them. George missed a smoothing iron and thought I got it and we talked about it but

made everything all right.   The conversation occurred last night about
9 o'clock.   He had told me about two or three hours before this that
we were going to have some trouble about this iron, and when I left
Mr. Bird's, where I work, I carried a butcher knife with me.   We went
to bed about 8 or 9 o'clock, and this morning about 3 or 4 o'clock I
got up out of bed and George got up and I hit him with an ax, knocked
him down and beat him over the head several times with the ax, and
then cut his throat with the butcher knife.   There was not a word spoken
between George Jackson and myself before I hit him with the ax.   After
I had killed George Jackson I threw the ax under the house and I car-
ried the butcher knife back to Mr. Bird's and washed the blood off."

There was corroboration.   One witness said: "We found the deceased
with his head mighty near cut off and his head just beaten to a jelly
and face cut up some."   An ax was used and found from information
given by appellant and was quite bloody.   Appellant immediately after
the homicide went to the house of a friend about 5 o'clock in the morn-
ing and told that he had killed deceased and exhibited a knife, which
was afterwards found.   Appellant expressed to this witness his intention
to flee, but subsequently said that in effect he would stay for fear his
departure would arouse suspicion against him.   At the time mentioned
he had on some clothes that were bloody.

There are two questions raised.   One of these reserves exception to
the evidence of a witness who testified: "I would take the deceased,
George Jackson, to be about 60 or 65 years old; he was just an old
worn-out negro, looked like to me, and he was all bunged up with rheu-
matism."   The objection urged was that the evidence was irrelevant,
immaterial, prejudicial and opinion.   The other bill complains of testi-
mony as follows: "George Jackson was a badly crippled and old negro,
that was his physical condition."   To this the same objection is urged.

Neither of these bills set out any surrounding facts showing the con-
nection in which the evidence was admitted.   Neither complies with the
rule which requires an exception to the admission of evidence to be
sufficiently explicit to enable the court to fully understand and know
all the facts on which the correctness or error of the ruling depends.
See Branch's Ann. P. C., p. 132; Eldridge v. State, 12 Texas Crim.
App., 208; Livar v. State, 26 Texas Crim. App., 115; Harris v. State,
67 Texas Crim. Rep., 251, 148 S. W. Rep., 1074.   Many decisions in
this court support the rule that the legal presumption is in favor of
the correctness of the trial court's ruling and that it is incumbent upon
appellant by the facts in his bill of exceptions to overcome this pre-
sumption.   Moore v. State, 7 Texas Crim. App., 14; Edgar v. State,
59 Texas Crim. Rep., 252; James v. State, 63 Texas Crim. Rep., 75.
We, in view of the extreme penalty, have carefully read the statement
of facts in connection with the bills.

It is possible that the trial judge regarded the allusion in appellant's
confession to the complaints made by deceased and the anticipated
trouble, in connection with the statement that deceased got out of bed

at 3 or 4 o'clock in the morning before the homicide took place, as affording a reason for the State to show the age and physical condition of deceased.   The statement that the deceased was "all bunged up with rheumatism" is not one requiring a reversal because the witness who used it was not a medical expert.   If the testimony was receivable at all it was on the ground that the deceased appeared disabled, and the specific ailment which disabled him was incidental only.   Reference to the case of Clayton v. State, 201 S. W. Rep., 172, is made in which it is suggested that evidence that deceased in that case was nearly blind should not be received unless this physical defect is known to appellant. The case was one in which the accused attempted to justify the homicide on the ground of self-defense on apparent danger, offering in part upon this issue peculiar conduct of the deceased.   The State, explaining this conduct, showed that the deceased's eyes were defective, and that his conduct would be attributable to that and not to any hostility towards the appellant in that case.   The statement in the opinion is made in accord with the established rule that one justifying the homicide on the ground of self-defense is to be tried from his standpoint, and that matters of which he was ignorant would not be admissible against him. The physical defects of the deceased in the instant case were doubtless not unknown to appellant.   Their character and the fact that the two parties lived together would indicate the contrary.   Moreover, the bill of exceptions does not show that appellant was ignorant of the physical condition of deceased, nor is the issue of self-defense raised; in fact, there are no controverted issues in the case.   The evidence is all one way, pointing to a homicide attended with no palliating facts or mitigating circumstances, and if that complained of was shown inadmissible it would not justify reversal.   Miller v. State, 31 Texas Crim. Rep., 609.

The complaints of the admission of the testimony stated in the imperfect bills mentioned have been looked to solely because of the assessment of the extreme penalty to the end that the judgment might not be executed if the record indicated that injustice was done, even though the complaint of it was made in incomplete bills of exception.

Finding no such injustice and no reversible error, the judgment of the lower court is affirmed.

*Affirmed.*