## Claude Blackmon v. The State.

No. 6795.    Decided February 14, 1923.

Rehearing denied June 27, 1923.

**1.—Murder—Manslaughter—Inspection of Letters.**

Where, upon trial of murder and a conviction of manslaughter, defendant requested the trial court to require the State to permit him to inspect certain letters which he had written, in possession of the sheriff, stating that they were necessary in the preparation of the case, *held*, that in the absence of information upon the subject in the bill of exceptions, this court must assume that the ruling of the trial court declining such inspection was not harmful. Following Brown v. State, 83 Texas Crim. Rep., 451, and other cases.

**2.—Same—Charge of Court—Self-Defense—Defendant's Standpoint.**

Where the bill of exceptions to the court's charge on self-defense, complaining that the charge failed to instruct the jury to view the matter from defendant's standpoint were too general to merit consideration, they will not be reviewed.

**3.—Same—Charge of Court—Requested Charge.**

Where the main charge fairly and adequately covered the law of apparent danger, and that the matter must be viewed from the standpoint of the defendant, it is not subject to the objection that the court failed to tell the jury that it was not necessary that deceased be actually armed.

**4.—Same—Charge of Court—Apparent Danger—Self-Defense.**

Where defendant complained that the court's charge required that the jury should find that the deceased had prior to the time he approached the door to defendant's room had done some act or spoken some word in either the dining room or room of the deceased manifesting an intention of the deceased to inflict violence on the defendant before they could find the defendant not guilty, but the charge was not subject to such interpretation, there was no reversible error.

**5.—Same—Relative Strength of Parties—Charge of Court.**

Where the defendant used the pistol upon the deceased and contended that he did so because he believed that the deceased was armed and was about to attack him with a pistol, there was no error in the court's failure to charge the jury on the relative strength of the parties. Following Ballard v. State, 71 Texas Crim. Rep., 587.

**6.—Same—Self-Defense—Charge of Court—State's Theory.**

It is not improper to submit a charge on the State's theory, and in submitting the converse of defendant's right of self-defense from the State's standpoint, there was no reversible error.

7.—Same—Argument of Counsel.

Where the court must assume that the argument of defendant's counsel related to a remark of the State's attorney, though the bill did not so state that it was invited, and besides it was not of such character as to demand a reversal of the judgment, there is no error.

8.—Bills of Exception—Argument of Counsel.

Where the bill fails to show the connection of the State's counsel's argument nor give any facts by which the court may appraise its merits, there is no reversible error.

9.—Same—Argument of Counsel.

Where the district attorney used the following language to the jury: "You should render a verdict that will announce to the world that murder must stop in old Wood County," and nothing more was shown in the bill, and the court instructed the jury to disregard the remark, there was no reversible error.

10.—Same—Evidence—Bills of Exception—Res Gestae.

A mere recital of the reasons for objecting to the evidence is not sufficient, but even on the merits the testimony of the witness is admissible as to the witness Champion, and was *res gestae.*

11.—Same—Evidence—Acts of Deceased.

Upon trial of murder and a conviction of manslaughter it is competent for the State to prove that the deceased was unarmed. Following Grubb v. State, 43 Texas Crim. Rep., 72.

12.—Same—Cross Examination—Bills of Exception.

Where the bills of exception related to matters of practice in cross-examination of defendant and some of his witnesses, and presented no harmful error, there was no reversible error.

13.—Same—Evidence—Letter.

Upon trial of murder and conviction of manslaughter there was no error in permitting the State to introduce in evidence a letter to an addressee who was defendant's brother and an eyewitness to the homicide, the letter being written by the defendant and directing the brother not to come into the trial even if he was summoned, etc. Following Jones v. State, 85 Texas Crim. Rep., 546, and other cases.

14.—Same—Rehearing—Charge of Court—Statement in Original Opinion.

Where this court inadvertently stated in its original opinion that no special charge was requested the same is here corrected. However, the court should have said that no exception was reserved to the refusal of the requested charge, and there is no reversible error.

15.—Same—Article 743, C. C. P.

It is the opinion of the court that under the facts of this case and the provision of the amended Article 743, C. C. P., reversible error would not have been presented even if proper exception had been reserved to the refusal of the requested charge on the admission of the main charge that it was not necessary to defendant's defense that deceased be actually armed.

16.—Same—Res Gestae Evidence.

There may have been some statements testified to by the witness Champion as made by deceased that could not be classed as coming within

the *res gestae* declaration. However, no objection appears to have been made specifically to any particular part, but the objection went to the entire statement, and therefore is not tenable, and there is no reversible error.

Appeal from the District Court of Wood. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*R. E. Bozeman,* and *Ben F. Cathey,* and *Jones & Jones,* for appellant. On question of court's charge in self-defense, Kemper v. State; 138 S. W. Rep., 1025; Tabor v. State, 135 id., 142; Edwards v. State, 135 id., 546.

*W. A. Keeling,* Attorney General, and *C. L. Stone,* Assistant Attorney General, for the State. On question of court's charge on self-defense and apparent danger, Anderson v. State, 63 Texas Crim. Rep., 525; Taylor v. State, 33 id., 531; Blake v. State, 3 Texas Crim. App. 589; May v. State, 6 id., 193; Clampitt v. State, 9 id., 27; Swain v. State, 48 Texas Crim. Rep., 103; Louis v. State, 89 id., 345.

MORROW, Presiding Judge.—Under an indictment for murder, appellant was convicted of manslaughter; punishment fixed at confinement in the penitentiary for a period of two years.

The appellant shot and killed Bethel Blackmon, his uncle. The homicide took place at the home of the deceased, where appellant also lived. Appellant was working for the deceased under an agreement by which the appellant was to receive the proceeds from a certain number of acres of cotton. A short time before the homicide, the appellant and deceased, according to some of the testimony, passed some harsh words concerning a settlement. The appellant, according to some of the testimony, called for a memorandum book in which the cotton weights were kept. The deceased did not produce the book at the time but said that he would do so later. Appellant went into a room occupied by him, in which there was also the witness Clark and Bennett Blackmon, a brother of the appellant. The deceased afterwards came to the door of the appellant's room, and appellant fired two shots through the door, and, according to some of the testimony, pursued the deceased out of the door and fired at him again.

Appellant presented the theory of self-defense, claiming that from certain movements of the deceased which he heard, he believed that the deceased had gotten a pistol out of a trunk situated in his room, and that he came to appellant's door with hostile intentions.

It is the State's theory that the deceased went to the door to furnish the appellant with the book which he had previously called for and to further discuss the settlement.

A great number of bills of exceptions are found in the record.

In Bill No. 1 it is made to appear that the appellant had written certain letters to Bennett Blackmon; that the Sheriff of Potter County arrested Bennett Blackmon and took the letters from his possession while he was under arrest without the consent of the appellant and without any legal process. Appellant requested the court in a motion to require the State to permit him to inspect the letters, stating that they were necessary in the preparation of his case. Under certain circumstances, the State's counsel may be required to furnish the appellant any written memorandum in his possession. See Green v. State, 53 Texas Crim. Rep. 491, and cases cited. See also the same case reported in 22 L. R. A., (N. S.) 706; also Jones v. State, 85 Texas Crim. Rep. 547. In the instant case, however, the bill does not reveal the purport of the letter in question, which seems to have been written by the appellant; nor does it show that the State made any use of it in the trial of its case; nor is the letter or its substance set out in the bill of exceptions referred to so that this court may determine the merits of the motion. In the absence of information upon the subject being revealed by the bill of exceptions, this court must assume that the ruling of the trial court was not harmful. Brown v. State, 83 Texas Crim. Rep. 451; Manning v. State, 51 Texas Crim. Rep. 214; Williams v. State, 53 Texas Crim. Rep. 3; Tillman v. State, 88 Tex. Crim. Rep., 10, 225 S. W. Rep. 165.

A number of exceptions are found to the charge on self-defense. In Bill No. 2, the complaint is that the charge failed to instruct the jury to view the matter from appellant's standpoint. The court, in its charge on self-defense, used this language:

"* * * and in determining whether or not there was reason to believe that danger did exist, the appearances must be viewed from the standpoint of the defendant at the time of the homicide and from no other standpoint."

In Bill No. 3, the complaint is made that the seventh paragraph of the charge does not specifically apply the law of self-defense to the facts of the case, but merely contains abstract propositions of law. The seventh paragraph of the charge covers about two pages of the record. So far as we are able to discern, the court, in an admirable manner, instructed on the law of self-defense as applicable to the evidence. The exception to it is too general to merit consideration. The statute requires that objections to the charge shall "distinctly specify each ground for objection." Art. 735, Code of Crim. Procedure.

The complaint in Bill No. 4 is that the charge does not specifically tell the jury that it was not necessary that "deceased be actually armed." There was no special charge requesting this, and the main charge fairly and adequately covered the law of apparent danger, and that in deciding the question, the matter must be viewed from

the standpoint of the appellant. We think the charge is not subject to the objection presented.

Bill No. 5 complains that the seventh paragraph of the charge requires that the jury should find that the deceased had, prior to the time he approached the door to defendant's room, had done some act or spoken some word or words, in either the dining-room or room of the deceased, manifesting an intention upon the part of the deceased to inflict violence upon the defendant. We do not understand the charge to be subject to such interpretation. From it we take the following quotation:

"Now, if you shall find from the evidence that the defendant, Claude Blackmon, about the time alleged in the indictment, shot and thereby killed the deceased, then if you shall further find that at the time he did so the deceased, by words or conduct or both, by words and conduct, or acts upon his part, created in the mind of the defendant a reasonable apprehension or fear of death or serious bodily injury at the hands of the deceased, viewing the facts and circumstances from the defendant's standpoint at the time, and, so believing, he shot and killed the deceased, or if you have a reasonable doubt thereof, you will find defendant not guilty, Or if you shall find that shortly prior to the difficulty in question, the defendant and deceased had words altercation, either in the dining-room or the room of deceased, or both, and that the deceased cursed and threatened the defendant with violence and that the defendant retired to his room, and that shortly thereafter the deceased came out of his room and into the hall and approached the room of the defendant, and that defendant called to him not to come in said room, and that thereupon the deceased opened or attempted to open the door of the defendant's room, or by words, acts or conduct upon his part it reasonably appeared to the defendant, viewed from his standpoint, that the deceased was about to enter said room for the purpose of killing the defendant or doing him serious bodily injury, or if because of any act or conduct upon the part of deceased it reasonably appeared to defendant, viewed from his standpoint at the time, that deceased was about to attack him for the purpose of killing him or doing him serious bodily injury, and so believing he shot and thereby killed the deceased, he would not be guilty, and if you so find or have reasonable doubt thereof you will find him not guilty."

The sixth bill complains of the failure of the court to refer in the charge to the relative strength of the parties. The appellant used a pistol upon the deceased and contends that he did so because he believed that the deceased was armed and was about to attack him with a pistol. Under these circumstances, a charge on the relative strength of the parties was not called for. Vann v. State, 45 Texas Crim. Rep. 434; Patterson v. State, 87 Texas Crim. Rep. 101; Ballard v. State, 71 Texas Crim. Rep. 587. The State's theory arising

from the testimony, was that the deceased went to appellant's room to hand him a book which the appellant had previously demanded, which contained some data bearing upon a settlement between the two, and that before the shooting took place, the deceased told the appellant that he was bringing the book. In submitting the converse of appellant's right of self-defense, from the State's standpoint, this phase of the case was presented to the jury. Appellant's complaint of it, we think, is not sound. See Branch's Ann. Tex. Penal Code, Sec. 1942; Humphries v. State, 25 Texas Crim. Rep. 127, and other cases collated by Mr. Branch in the section mentioned to the effect that it is not improper to charge on the State's theory.

The wife of the deceased testified that appellant came and said: "Uncle Bethel, I want the cotton book." The deceased replied that he would look for it in a minute; that after some further conversation, the appellant left the room in a bad humor and went to his own room; that the deceased took the book and went to appellant's door and said: "Claude, open the door; here is your book;" that immediately shots were fired.

The witness Champion testified that he lived near the deceased; that he heard shots fired; that in a short time, quicker than a man could usually walk the distance, he heard some one call him and say: "Come to me quick. This is Bethel. I am not going to hurt you. Claude has killed me, he shot me; come to me quick; I can't live but a few minutes." Deceased told the witness how the shooting took place. He said that it was about a settlement; that it was principally because he would not buy the top crop of cotton that was in the field; that that was what they were talking about; that Claude went into the other room and began quarrelling; that the deceased got his book and said: "Here, take the book and look over it, satisfy yourself; I want to treat you right." Claude told him not to come in; that the door was not open, and when the deceased started to open it, the appellant shot him; that appellant shot him and ran off; that he, the deceased, had no pistol and was not armed.

The witness further testified that he made an examination of the deceased and found that he was wounded; also found certain articles upon his person, and also found a steel hondoo loop out of a lariat rope, a small tap and some nails, but found neither pocket knife nor pistol. He also described the wounds. They were on the left side below the short ribs; through the fleshy part of the arm, and through the wrist. There were two holes in the arm and one in the side. The witness also examined the door separating appellant's room from that of the deceased and found two bullet holes through the panel of the door.

Exceptions to the court's charge embraced in Bills Nos. 7 and 8 were not sufficiently specific in their complaint of the charge to require consideration.

Bills Nos. 12 and 14 relate to an argument in which one of the attorneys said:

"I would rather you would vote the defendant a resolution of thanks and give him a new gun and tell him to kill another man than suspend the sentence in this case."

We assume that this relates to a remark of the prosecuting attorney, though the bill does not so state. The bill does not show that it was not invited. If improper, which we do not hold, we think it was not such as would demand a reversal of the judgment.

Another bill complains that the same attorney said:

"Why did you object to the testimony of Mr. Jolley about what happened on the trip to Tacoma and let the light in."

This bill fails to show the connection of Mr. Jolley and the trip to Tacoma with the case; nor does it give any facts by which we may appraise its merits.

The District Attorney used the following language:

"That you should render a verdict that will announce to the world that murder must stop in Old Wood County."

Nothing more is shown by the bill. However, the court instructed the jury to disregard the remark.

Complaints of the testimony of the witness Champion, have been set out above, are made in several bills of exceptions. A mere recital of the reasons for objecting to the evidence is not sufficient. Brown v. State, 83 Texas Crim. Rep. 451; Tillman v. State, 88 Texas Crim. Rep., 10, 225 S. W. Rep. 165, and other cases. The matter might be disposed of on that ground. However, on the merits, we deem the evidence admissible. The statement of facts to which we have adverted above shows the connection of this testimony with the transaction and reveals a state of facts showing that it was so closely connected with the shots which were fired as to bring it within the res gestae rule. The deceased had gone a short distance from his own house, where he received his wounds, towards the home of the witness Champion, when, by his outcries, he summoned Champion to his side and there related the facts which have been detailed above and which are set out in the bills. Taking the testimony as a whole, we think this manifestly brings it within the res gestae rule. Branch's Ann. Tex. P. C., Sec. 83. Its admission is also probably justified as a dying declaration.

It was competent for the State to prove that the deceased was unarmed. Grubb v. State, 43 Texas Crim. Rep. 72.

Bills Nos. 20 to 29 inclusive have been carefully examined and considered. They relate to matters of practice in cross-examination of appellant and some of his witnesses, the complaint being in the main of the propounding of improper questions. The bills present no harmful error, and they are not deemed of such importance as justifies a discussion in detail.

The State introduced in evidence a letter addressed to L. Bennett, Jesseville, Arkansas, which had been written by the appellant. The addressee was, in fact, Bennett Blackmon, a brother of the appellant and an eye-witness to the homicide. In the letter the appellant advised his brother to go to Vernon, Texas, where a subpœna might be served upon him as a witness in appellant's case. In the letter, it is said:

"\* \* \* get subpœnaed, and then if you are sick or something not come, you don't have to come even after you are summoned, but if you are not summoned they can force me into trial without you. \* \* \* You be sure and do what I say, then when the case is continued you can meet me somewhere."

Other expressions in the letter indicate that it would bring about a condition that would result in a continuance of appellant's case. It is susceptible of that construction. Bennett Blackmon had given testimony on the trial which was very favorable to the appellant. It was shown by the bill that the letter was taken from Bennett Blackmon while he was under arrest and without his consent. In connection with the circumstances which it reveals and which were disclosed in connection with it, it bore upon his animus and showed the relation between the appellant and the witness. The fact that it was obtained from Bennett Blackmon by the officers who arrested him did not militate against its admissibility in evidence against the appellant. It was a declaration of the appellant concerning the case on trial, and which declaration was made to a witness in behalf of the appellant. Renfro v. State, 42 Texas Crim. Rep. 393; Jones v. State, 85 Texas Crim. Rep. 546 and cases there cited.

The affirmance of the judgment is ordered.

*Affirmed.*

ON REHEARING.

June 27, 1923.

HAWKINS JUDGE.—In paragraph eight of the original opinion discussing the complaint that the court omitted to charge the jury that it was not necessary to appellant's defense that "deceased be actually armed," we incorrectly stated that no special charge was presented requesting this. The motion for rehearing calls attention to this mistake. We should have said that no exception was reserved to the refusal of the special charge. The special charges found in the record shown by proper endorsement that they were timely presented and were refused; but neither by endorsement on the charges themselves, nor by independent bills, it is shown exception to their refusal was taken. This must be shown; but the point may be preserved in either of the ways mentioned. Craven v. State, 93 Texas Crim. Rep., 328, 247 S. W. Rep., 515; Brooks v. State, 93 Texas Crim. Rep., 206, 247

S. W. Rep., 517; Hickman v. State, 93 Texas Crim. Rep. 407, 247 . S. W. Rep., 518; Rhodes v. State, 93 Texas Crim. Rep., 574, 248 S. W. Rep., 679; Linder v. State, (No. 6558, opinion on rehearing, May 2, 1923). Upon the question raised by exception to the main charge on this point we are referred to Kemper v. State, 63 Tex. Crim. Rep., 1. That opinion was rendered in 1911, whereas present Article 743 Code Crim. Proc., was amended in 1913. It is our opinion that under the facts of this case and the provision of said amended article reversible error would not have been presented even if proper exception had been reserved to the refusal of the special charge in view of the main charge upon the issue.

There may have been some statements testified to by the witness Champion as made by deceased that could not be classed as coming within a res gestae declaration. However, no objection appears to have been made specifically to any particular part but the objection went to the entire statement. As made it was not tenable. The portions of the statement which might have come under the inhibition if specifically objected to do not occur to us as being so seriously harmful as contended by appellant.

The motion for rehearing is overruled.

*Overruled.*